In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2661

DAVID HUTCHINS, et al.,

*Plaintiffs-Appellees,*

*v.*

DAVID A. CLARKE, JR., et al.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:07-cv-00526-WEC—**William E. Callahan, Jr.**, *Magistrate Judge.*

ARGUED JUNE 10, 2011—DECIDED OCTOBER 24, 2011

Before BAUER, FLAUM and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Milwaukee County Deputy Sheriff David Hutchins brought an action for comments made by Milwaukee County Sheriff David Clarke regarding Hutchins' disciplinary history with the sheriff's department. The district court granted the plaintiffs' motions for summary judgment, finding that Sheriff Clarke violated (1) Wisconsin's Open Records Law, Wis. Stat. §§ 19.31-19.39; (2) Wisconsin's Right of Privacy statute, Wis. Stat. § 995.50; and (3) 42 U.S.C. § 1983

for retaliation and depriving Hutchins of his First Amendment right to free speech. We reverse the district court on all three counts.

## I. BACKGROUND

This case arises from a pair of on-air phone calls to a popular Milwaukee, Wisconsin radio show, one from Hutchins and the other from Sheriff Clarke. On May 17, 2007, a discussion regarding Sheriff Clarke's avoidance of certain African-American groups took place on the "Eric Von Show," a listener-interactive radio show which is broadcasted on WMCS AM 1290. On that day, Hutchins, a routine listener and caller, called the show in response to the critical comments regarding Sheriff Clarke's involvement with an African-American community organization dedicated to reducing crime. Hutchins was likewise critical of Sheriff Clarke, stating words to the effect that Sheriff Clarke was not a good fit for the Milwaukee County Sheriff position. In response to Hutchins' comments, Sheriff Clarke called the Eric Von Show and retorted by calling Hutchins a "slacker" who did not deserve to be an employee of the sheriff's department. Sheriff Clarke expressed the view that Hutchins was bitter and carried a grudge against him because of a disciplinary action taken in 2004 by him against Hutchins. Sheriff Clarke identified this disciplinary action on-air as a step taken as a result of Hutchins' "sexual harassment" of another employee. In actuality, the disciplinary action was for Hutchins' violation of a department rule that prohibited offensive

conduct or language toward the public or toward county officers or employees.

Hutchins and the Milwaukee Deputy Sheriff's Association filed a complaint alleging that the defendants violated Hutchins' First Amendment right to free speech and both plaintiffs' First Amendment right of free association by retaliating against the plaintiffs, in violation of 42 U.S.C. § 1983. The plaintiffs also alleged that the defendants violated the plaintiffs' rights under Wisconsin statutory law, specifically under (1) Wisconsin's Law Enforcement Officers' Bill of Rights, Wis. Stat. §§ 164.015, 164.03; (2) Wisconsin's Municipal Employment Relations Act, Wis. Stat. § 111.70(2), (3) Wisconsin's Open Records Law, Wis. Stat. §§ 19.31-19.39; and (4) Wisconsin's Right of Privacy statute, Wis. Stat. § 995.50(2)(c).

Both parties filed motions for summary judgment on all counts. The district court granted summary judgment in favor of the plaintiffs on (1) their claim under § 1983 for Sheriff Clarke's disclosure of Hutchins' disciplinary history, (2) their claim under Wisconsin's Open Records Law, and (3) their claim under Wisconsin's Right of Privacy statute. The court granted the defendants' motions for summary judgment on the remaining claims.

The defendants filed a motion for reconsideration and the district court issued an order denying the motion. The defendants have appealed the claims under Wisconsin's Open Records Law, Wisconsin's Right of Privacy statute, and § 1983 for retaliation in Sheriff Clarke's disclosure of Hutchins' disciplinary history.

## II. DISCUSSION

### A. Wisconsin's Open Records Law

The district court granted summary judgment in favor of Hutchins, finding that Sheriff Clarke violated Wisconsin's Open Records Law by failing to provide notice and failing to conduct a balancing test before orally discussing the contents of Hutchins' disciplinary file. The appellants argue that the district court erred when it applied Wisconsin's Open Records Law to Sheriff Clarke's oral reference to Hutchins' disciplinary record. We agree and can dispose of this issue without delving much into the district court's analysis or the parties' arguments; Wisconsin's Open Records Law simply does not apply to the facts of this particular case, and the plaintiffs have no claim under the statute.

Wisconsin's Open Records Law was enacted to provide the public with "the greatest possible information regarding the affairs of the government and the official acts of those officers and employees who represent them." Wis. Stat. § 19.31. The statute provides that "except as otherwise provided by law, any requester has a right to inspect any record." Wis. Stat. § 19.35(1)(a). With regard to a record containing information about an employee's disciplinary history, as in this case, the statute provides that if the authority decides to permit access to the requested record, the authority shall serve written notice on the employee. Wis Stat. § 19.356(2)(a). When deciding whether to open a record, the authority must conduct a balancing test to weigh the public interest in protecting its citizens' reputations and privacy against the

strong public interest in maintaining open records. *Woznicki v. Erickson*, 549 N.W.2d 699, 703 (Wis. 1996). Once the employee receives notice, the employee then has the option of seeking a court order to restrain the authority from permitting access to the record. Wis. Stat. § 19.356(4).

Here, the facts in the record show that Sheriff Clarke called into a radio show and, spontaneously or not, discussed details regarding Hutchins' disciplinary history. Nothing from this set of facts leads us to the conclusion that Wisconsin's Open Records Law should be invoked. There was no request to inspect Hutchins' disciplinary record, no permission granted, and no balancing test undertaken.[1] Perhaps the plaintiffs themselves said it

---

[1] The Wisconsin Open Records Law defines a record as:

> [A]ny material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority. "Record" includes, but is not limited to, handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), computer printouts and optical disks. "Record" does not include drafts, notes, preliminary computations and like materials prepared for the originator's personal use or prepared by the originator in the name of a person for whom the originator is working; materials which are purely the personal property of the custodian and have no relation to his or her office; materials to which access is limited by copyright, patent or
> (continued...)

best in their own motion for summary judgment: "Com-pounding the problem is the undisputed fact that nobody sought access to Hutchins' personnel file in the first place. As there was no 'request,' there was nothing to 'balance,' and the release of such information must be seen for what it was—an attempt to smear Hutchins in front of the audience of the Eric Von Show . . . ." While the plaintiffs have since changed their tune, we find this initial argument much more persuasive than their current one.

While Wisconsin courts have not yet considered this issue, we believe our opinion is consistent with the trajec-tory of Wisconsin case law. Prior to the decision in *Woznicki v. Erickson*, the Open Records Law only autho-rized a requester to bring an action for mandamus com-pelling a custodian to release a record under Wis. Stat. § 19.37. *Woznicki* changed this, holding that an employee who wishes to keep the authority from disclosing the requested information may also bring an action under the statute. The Open Records Law was then amended

---

[1]  (...continued)

> bequest; and published materials in the possession of an authority other than a public library which are available for sale, or which are available for inspection at a public library.

Wis. Stat. § 19.32(2). Because the Open Records Law is not applicable, we save the determination of whether Sheriff Clarke's oral statement constituted a "record," as that term is used in the Open Records Law, for another day.

to reflect the employee's right to sue under these circumstances. Hutchins would have us take this a step further and create a cause of action when the procedures in the Open Records Law were not followed, thus turning the statute into some kind of enforceable due process right. We must reject Hutchins' interpretation of the Open Records Law because it vastly expands the causes of actions under the statute.

Although Wisconsin's Open Records Law is not applicable here, we note that Hutchins could have (and in some cases did) brought his complaint under a number of more applicable theories, including but not limited to defamation, right of privacy, or retaliation, but Wisconsin's Open Records Law has no application here. While we find Sheriff Clarke's on-air comments regarding Hutchins' disciplinary history insensitive, not to mention inaccurate, we cannot say that his actions were in violation of Wisconsin's Open Records Act, and we reverse the decision of the district court on this issue.

### B. Wisconsin's Right of Privacy Statute

The plaintiffs argue that the defendants invaded Hutchins' right of privacy in violation of Wisconsin's Right of Privacy statute, Wis. Stat. § 995.50, and the district court found in favor of the plaintiffs. The relevant section of the act defines "invasion of privacy" as,

> [p]ublicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either

> unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

Wis. Stat. § 995.50(2)(c).

There is most certainly a question of material fact as to the first four factors that create the invasion of privacy claim (which, we note, appear to weigh heavily in favor of the plaintiffs). However, we do not reach this analysis because the information communicated is available to the public as a matter of public record.

The appellants' argument with regard to the right of privacy claim is that Hutchins' disciplinary record is considered a public record because the record is the product of a closed investigation, and records of employee misconduct may be released under Wisconsin's Open Records Law once the investigation has concluded.[2] The district court addressed this argument and disagreed, stating that Hutchins' disciplinary file was not a public record, basing this conclusion on its finding that Sheriff Clarke violated Wisconsin's Open Records

---

[2] While it is true that Wisconsin courts have held that there is not a blanket exemption from public disclosure for records of closed investigations against a public employee as the appellants argue, *Wisconsin Newspress v. Sch. of Sheboygan*, 546 N.W.2d 143, 148 (Wis. 1996), the common-law balancing test still applies. Just because a disciplinary record *may* be disclosed does not mean it should be disclosed.

Law by failing to provide notice and conduct a balancing test.

The district court entangled its analysis of Wisconsin's Open Records Law with its analysis under Wisconsin's Right of Privacy statute and incorrectly relied on its procedural finding under the Open Records Law when determining whether the disciplinary record should remain closed under the Right of Privacy statute. While the two statutes are related laws, they are only related in that a finding under the Open Records Law that a record should be made public would necessarily mean that "the information was available to the public as a matter of public record." This is true because both statutes apply the same common-law balancing test when determining whether a record is "public." In this case, however, the district court never made a finding as to whether the record could be made public under the Open Records Law (and thus under the Right of Privacy statute). Instead, it found only that the procedures delineated in the Open Records Law were not followed. These procedures, however, have no impact on the question of whether a record is "public" or not; they are merely procedural, not substantive.

Although the district court's opinion and the parties' briefs identified the balancing test as being pertinent to a public records finding under the Right of Privacy statute, all failed to adequately apply the balancing test to the facts in this case. Because the application of the balancing test is a question of law, we apply our analysis independently. *Milwaukee Journal Sentinel v.*

*Wisconsin Dep't of Admin.*, 768 N.W.2d 700, 708 (Wis. 2009) (citing *Wisconsin Newspress*, 546 N.W.2d at 149).[3]

In order to determine whether Hutchins' disciplinary history is "information available to the public as a matter of public record," we weigh the public interest in protecting its citizens' reputations and privacy against the strong public interest in maintaining open records, considering the relevant factors to determine whether the surrounding factual circumstances create an "exceptional case" not governed by the strong presumption of openness. *Hempel v. City of Baraboo*, 699 N.W.2d 551, 567 (Wis. 2005). When applying the common-law balancing test, our consideration is not of personal embarrass-

---

[3] Wisconsin courts have not defined "public record" in the Privacy Act context. But, Wisconsin common law has always recognized a concern for the privacy and reputation of citizens and therefore used a balancing test before making certain information public. In a decades-old case, the court noted that:

> [T]he right to inspect public documents and records at common law is not obsolete [sic]. There may be situations where the harm done to the public interest may outweigh the right of a member of the public to have access to particular public records or documents. Thus, the one must be balanced against the other in determining whether to permit inspection.

*State ex rel. Youmans v. Owens*, 137 N.W.2d 470, 474 (Wis. 1966). Wisconsin courts have repeated this fundamental principle in nearly every public records case. *See, e.g.*, *Woznicki*, 549 N.W.2d at 701; *Wisconsin Newspress*, 546 N.W.2d at 147; *Newspapers, Inc. v. Breier*, 279 N.W.2d 179, 187 (Wis. 1979).

ment and damage to reputation, but whether disclosure would affect any public interest. *Zellner v. Cedarburg Sch. Dist.*, 731 N.W.2d 240, 252 (Wis. 2007); *Linzmeyer v. Forcey*, 646 N.W.2d 811, 820 (Wis. 2002) ("[T]he public interest in protecting individuals' privacy and reputation arises from the public effects of the failure to honor the individual's privacy interests, and not the individual's concern about embarrassment.").

After balancing the two interests in this case, we find that the public interest in disclosure of this information is not outweighed by the public interest in maintaining it as a closed record. Many of the factors that favor non-disclosure of police officers' personnel files are not present in Hutchins' case. *See Hempel*, 699 N.W.2d at 568-70 (records pertaining to internal investigations may be withheld from the public when they are the result of a confidential investigation and disclosure would discourage other police officers and employees within the police department from providing potentially damaging information about a colleague); *State ex rel. Journal/Sentinel, Inc., Anne Bothwell v. Arreola*, 558 N.W.2d 670, 676-77 (Wis. Ct. App. 1996) (the release of disciplinary files might hamper the police department's ability to conduct an effective investigation against an accused officer); *Law Offices of William A. Pangman & Associates, S.C. v. Zellmer*, 473 N.W.2d 538, 545 (Wis. Ct. App. 1991) (disclosure of personnel records would have a "chilling effect" on law enforcement because officers might make fewer arrests if they knew their personnel files might be made public as a result of the arrest); *Law Offices of William A. Pangman & Associates v. Stigler*, 468 N.W.2d

784, 789 (Wis. Ct. App. 1991) (release of records would endanger officer engaged in undercover work); *Village of Butler v. Cohen*, 472 N.W.2d 579, 584 (Wis. App. 1991) ((1) the possibility of cross-examination of matters in personnel records might impair police officer's ability or willingness to testify in court, and (2) fewer qualified candidates would accept employment in a position where they could expect their personnel files are regularly open for public review).

Nevertheless, some factors favoring non-disclosure do apply. For example, the release of Hutchins' disciplinary file could jeopardize the personal privacy of the employee who made the complaint about his offensive conduct. *See State ex rel. Ledford v. Turcotte*, 536 N.W.2d 130, 132 (Wis. Ct. App. 1995).[4] And there is a valid concern about the impact of disclosing personnel files on intra-department morale. *Zellmer*, 473 N.W.2d at 543.[5]

---

[4] Generally, this problem can be addressed by simply redacting the identities of a victim or any individuals interviewed in the investigation.

[5] We note that Wisconsin cases "indicate a legislative recognition of a public policy interest in generally denying access to the personnel files of police officers," *Village of Butler*, 472 N.W.2d at 584, but there have been cases where police officers' and police department employees' disciplinary files have been disclosed. *See, e.g., Local 2489 AFSCME, AFL-CIO v. Rock County*, 689 N.W.2d 644 (Wis. Ct. App. 2004); *Arreola*, 558 N.W.2d 670; *Isthmus Publishing Co. Inc. v. City of Madison Police Dep't*, 1995 WL 819176 (Wis. Cir. Ct. 1995).

The public policies favoring disclosure include (1) the intent of Wisconsin's Open Records Law states that "[t]he denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied," Wis. Stat. § 19.31; (2) the public has a particularly strong interest in being informed about its public officials, especially in the case of law enforcement officers, *Local 2489*, 689 N.W.2d at 654; and (3) the public has entrusted its police officers to protect the community from any wrongdoings, and the misconduct for which Hutchins' was disciplined "occurred in the location where the public has entrusted [the employees] to work and during the performance of [their] public duties, and therefore should be more subject to public scrutiny," *Linzmeyer*, 646 N.W.2d at 819.[6]

In addition to these factors, which have been identified in Wisconsin cases, there are additional relevant facts favoring disclosure in this case. Whether the county sheriff is performing his job in a satisfactory manner is particularly relevant to the public interest. Criticism of the sheriff's performance, especially from an individual who freely identified himself on-air as a deputy within the sheriff's department, gives the public a heightened interest in the origin and motives behind that criticism.

---

[6] *See also Isthmus Publishing Co.*, 1995 WL 819176, at *12 ("Clearly police personnel have a privacy interest in keeping reports of misconduct secret. But the interest of society in scrutinizing the uses to which police personnel put their powers weighs more heavily. This has been the holding of many previous cases including *Youmans* and *Ledford*.").

We note that it is problematic when a government employer openly discusses his employees' disciplinary files, and Wisconsin's Right of Privacy statute remains a viable form of relief. However, in this case, after applying the common-law balancing test to Hutchins' disciplinary file, we conclude that there is no genuine public interest in keeping the record closed to the public. Hutchins' claim under Wisconsin's Right of Privacy statute fails.

### C. Unlawful Retaliation Under the First Amendment

The plaintiffs argue that Sheriff Clarke retaliated against Hutchins for his comments on the Eric Von Show when he disclosed Hutchins' disciplinary history on the radio show, and that this retaliation was in violation of 42 U.S.C. § 1983 as a deprivation of Hutchins' First Amendment rights. The district court found that all the elements of the § 1983 claim were satisfied, using the purported Open Records Law violation as grounds for finding an adverse action. We disagree.

It is well established that a public employee retains First Amendment rights to free speech. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 970 (7th Cir. 2001). As a general rule, the government cannot retaliate against its employees for engaging in constitutionally protected speech. *Vargas*, 272 F.3d at 970. When a plaintiff brings a § 1983 claim for retaliation in violation of First Amendment rights in the employment context, our analysis involves three steps. First, the court must determine whether the employee's speech was constitutionally

protected under the *Connick-Pickering* test. *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006). Second, the plaintiff must establish that the speech was a substantial or motivating factor in the alleged retaliatory action. *Id.* Finally, if the plaintiff satisfies the first two steps, the defendant has an opportunity to establish that the same action would have been taken in the absence of the employee's protected speech. *Id.* The dispute in this case centers around the second factor.

The appellants argue that the retaliatory action Hutchins complains of—the on-air disclosure of his disciplinary history—is not an "adverse employment action" to support his § 1983 retaliation claim. The district court addressed this concern, recognizing that Sheriff Clarke's comments on the Eric Von Show did not relate to the conditions of Hutchins' employment, but nevertheless completed the analysis and found the action to be sufficiently adverse.

A § 1983 retaliation claim does not require an adverse employment action within the same meaning as other anti-discrimination statutes. *Spiegla v. Hull*, 371 F.3d 928, 941 (7th Cir. 2004); *Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000).[7] We have explained that what was meant

---

[7] In *Power*, we stated that:

> Not section 1983, but the federal statutes, such as Title VII of the Civil Rights Act of 1964, that forbid invidious discrimination in employment, limit their protection to victims of "adverse employment action," which is judicial
>
> (continued...)

by "adverse employment action" in the § 1983 context is that the action of which the employee is complaining must be sufficiently adverse to deter the exercise of the individual's right to free speech. *Power*, 226 F.3d at 820-21. Therefore, Hutchins need only show that Sheriff Clarke's disclosure was sufficiently adverse to chill his free speech.

While the district court used the purported Open Records Law violation as a basis for finding an adverse employment action and, consequently, a § 1983 violation, we cannot conclude that Sheriff Clarke violated Wisconsin's Open Records Law, so we disagree with the district court's reasoning and undertake our own analysis on the matter.

The appellants say that in undertaking this analysis, the court must take into consideration Sheriff Clarke's own right to free speech, and they are correct. We cannot afford one party his right to free speech while discounting the rights of the other party. Other circuits and courts within our circuit have addressed this situation—where

---

[7] (...continued)

shorthand (the term does not appear in the statutes themselves) for the fact that these statutes require the plaintiff to prove that the employer's action of which he is complaining altered the terms or conditions of his employment . . . . Any deprivation of a legal right under color of law that is likely to deter the exercise of free speech, whether by an employee or anyone else, is actionable . . . [if] the circumstances are such as to make such a refusal an effective deterrent to the exercise of a fragile liberty. 226 F.3d at 820.

the alleged retaliatory action is in itself speech—by limiting a finding of an adverse action only to situations where the defendant's speech is threatening, harassing, or intimidating. *See Owens v. Ragland*, 313 F.Supp.2d 939, 949 (W.D. Wis. 2004); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000) ("[W]here a public official's alleged retaliation is in the nature of speech, in the absence of threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory.").

Here, Sheriff Clarke called the Eric Von Show and expressed his opinion that Hutchins' criticism was a result of Hutchins carrying a grudge against him for a past disciplinary action. Sheriff Clarke then went on to discuss that disciplinary action. Sheriff Clarke's comments about Hutchins' disciplinary history pertain to a *past* disciplinary action and in no way intimate any *future* disciplinary action against Hutchins with regard to that closed matter. Sheriff Clark's disclosure of Hutchins' disciplinary history did not constitute a threat, coercion, or intimidation that punishment, sanction, or adverse regulatory action would immediately follow, and so were not actionable under § 1983. Even if some "harassment and ridicule" might be retaliatory speech under § 1983 (*See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)), Sheriff Clark's statements did not rise to that level.

The appellees direct our attention to the Sixth Circuit, which has heard cases in which a public official has

responded to an individual's criticism by revealing intimate and embarrassing details about that individual. *See, e.g.*, *Bloch v. Ribar*, 156 F.3d 673, 679-80 (6th Cir. 1998). That circuit recognizes that in some cases where the alleged retaliation is speech, causing "embarrassment, humiliation, and emotional distress" that is damaging to the plaintiff may be actionable under § 1983, regardless of any lack of threat. *Id.* at 679-80. Even if we were to follow this thinking, Hutchins' case differs greatly from those cases. In *Bloch*, the plaintiff, a rape victim, was interviewed by a newspaper about the lack of progress in the rape investigation and her statements were published in articles that were critical of the county sheriff's department. In response to the articles, the county sheriff held a public press conference, where he released "highly personal and extremely humiliating details" of the rape that even the plaintiff's husband had not been made aware. Sheriff Clarke's comments do not rise to the level of the comments made in *Bloch*.

The record demonstrates that Sheriff Clarke's retaliatory conduct in discussing Hutchins' disciplinary history was not accompanied by threat, coercion, or intimidation intimating punishment. Accordingly, it is not actionable under § 1983, and we reverse the decision of the district court.

## D. Pleadings

The appellants argue that the plaintiffs did not plead a violation of the Wisconsin Open Records Law, nor did they plead a statutory right of privacy claim. We

will address each in turn and will not reverse unless we have found the district court has abused its broad discretion to constructively amend a complaint. *See Sunstream Jet Express, Inc. v. Int'l Air Service Co., Ltd.*, 734 F.2d 1258, 1272 (7th Cir. 1984).

As for the Wisconsin Open Records Law, the appellants argue that the plaintiffs never raised the issue until they submitted a reply brief in support of the plaintiffs' motion for summary judgment. The district court recognized that the plaintiffs' complaint did not formally state a cause of action under Wisconsin's Open Records Law, but cited to the well-known rule that a pleading can be constructively amended when both parties expressly or impliedly consent to the constructive amendment. *See* Fed. R. Civ. P. 15(b); *Matter of Prescott*, 805 F.2d 719, 725 (7th Cir. 1986). The test for consent is "whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *Matter of Prescott*, 805 F.2d at 725 (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)). Here, we are satisfied that the complaint was constructively amended to include an Open Records Law violation, as the defendants impliedly consented to litigating the issue. The plaintiffs plainly stated in their own brief in opposition to defendants' motion for summary judgment and in support of plaintiffs' motion for summary judgment that Sheriff Clarke violated Wis. Stat. §§ 19.31-19.39. Furthermore, the defendants were not unfamiliar with the substance of the Open Records Law; they used the statute as their

own defense to the plaintiffs' right of privacy claim in their own brief and reply brief in support of their motion for summary judgment. The district court did not abuse its discretion in finding that the parties consented to the constructive amendment of the pleadings to include a claim under Wisconsin's Open Records Law.

The appellants also argue that the plaintiffs did not plead a statutory right of privacy claim under Wis. Stat. § 995.50 with specificity because the claim was initially classified as "liberty interest-right of privacy." Again, we are satisfied that the complaint was constructively amended to include a privacy violation under the Wisconsin statute. The *ad damnum* clause in the plaintiffs' complaint states that the defendants violated Hutchins' privacy rights under Wis. Stat. § 995.50. Also, the defendants address the elements of the plaintiffs' § 995.50 claim in their brief in response to the plaintiffs' motion for summary judgment. The district court did not abuse its discretion in finding that the parties consented to the constructive amendment of the pleadings to include a claim for a right of privacy violation under Wis. Stat. § 995.50.

## III. CONCLUSION

For the reasons stated above, we REVERSE the decision of the district court and REMAND for further proceedings consistent with the findings expressed herein.

WILLIAMS, *Circuit Judge*, concurring. I join the majority's opinion in full except as to Part II.C. I agree that, given the facts of this case, Sheriff Clarke's discussion of Hutchins's disciplinary history is not actionable under § 1983. I write separately to note that I do not read the majority's opinion to overturn our circuit's longstanding recognition that retaliatory speech may be actionable under § 1983 if it is likely to deter a person of ordinary firmness from exercising his First Amendment rights, even if not accompanied by a threat, coercion, or intimidation intimating punishment.

We have long recognized such claims. For example, in *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982), the plaintiff complained of a "campaign of petty harassments" designed to punish her for having run for public office and endorsing a candidate at a press conference following the primary election. Among other things, she was allegedly ridiculed for bringing a birthday cake to her office to celebrate a co-worker's birthday. Finding that a "campaign of harassment which though trivial in detail may have been substantial in gross," we reversed the district court's dismissal of the complaint and remanded for a factual determination of whether the alleged "campaign reached the threshold of actionability under section 1983." *Id.* at 625.

We reiterated this point in *DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995), by explaining that "even minor forms of retaliation" such as "diminished responsibilities" or "false accusations" can be actionable under the First Amendment if sufficiently

adverse to chill employee speech on matters of public concern. Since then, we have consistently applied this standard. *E.g., Fairley v. Fermaint*, 482 F.3d 897, 903 (7th Cir. 2007) ("Suppose the white guards at a prison mercilessly harass the black guards and make their lives miserable, or suppose the men demean the women. Such misconduct may be actionable under the Constitution."); *Massey v. Johnson*, 457 F.3d 711, 721 (7th Cir. 2006) ("In the first amendment context, harassment . . . may be actionable if it is designed to deter a public employee's free speech."); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002) ("[D]efamation inflicts sufficient harm on its victim to count as retaliation . . . .").

Our standard for actionable retaliatory speech was acknowledged with approval by the Supreme Court in *Rutan v. Republican Party of Illinois.* 497 U.S. 62, 76 n.8 (1990) ("[T]he First Amendment . . . protects state employees . . . from 'even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights.'" (quoting *Rutan v. Republican Party of Ill.*, 868 F.2d 943, 954 n.4 (7th Cir. 1989) (citing *Bart*, 677 F.2d at 622))). And it has been adopted or reaffirmed by a majority of our sister circuits. *See, e.g., Welch v. Ciampa*, 542 F.3d 927, 937 (1st Cir. 2008) (recognizing retaliatory harassment may be actionable under objective test); *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003) (same); *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (same); *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 584-85 (D.C. Cir. 2002) (same); *Bloch v. Ribar*, 156 F.3d 673, 679-80 (6th Cir. 1998) (same); *Bernheim v. Litt*, 79

F.3d 318, 325-26 (2d Cir. 1996) (same). *But see McLaughlin v. Watson*, 271 F.3d 566, 573-74 (3d Cir. 2001) (holding that speech must be a threat or coercion to be actionable); *Colson v. Grohman*, 174 F.3d 498, 513-14 (5th Cir. 1999) (holding that, in the First Amendment employment context, harassing speech must constitute "constructive adverse employment action" to be actionable); *cf. Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (recognizing that outside of the employment context, speech that would "chill a person of ordinary firmness" is actionable). Indeed, even the Fourth Circuit case cited by the majority accepts that retaliatory speech that is "sufficiently embarrassing, humiliating, or emotionally distressful" may be "one possible exception" to its rule requiring a threat of punishment for cognizability. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 688 (4th Cir. 2000).

In light of our enduring recognition that harassing retaliatory speech may be actionable under § 1983, I write separately to make clear that the majority's position neither deviates from nor disturbs this well-settled position. Given the facts of this case, I—like the majority—do not believe that Sheriff Clarke's statements rise to the level of actionability. I therefore concur.