In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1778

DWAYNE VOLKMAN,

*Plaintiff-Appellant*,

*v.*

LEE RYKER, MARC HODGE, and
BARBARA HESS,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:10-CV-02132— **Sue E. Myerscough**, *Judge*.

ARGUED SEPTEMBER 19, 2013—DECIDED DECEMBER 2, 2013

Before MANION, KANNE, and SYKES, *Circuit Judges*.

KANNE, *Circuit Judge*. Dwayne Volkman was employed as
a casework supervisor at the Lawrence Correctional Center in
Illinois when he called the local State's Attorney to comment

on the criminal prosecution of a co-worker for violations of Illinois Law and Department of Corrections policy. After an internal investigation, Volkman received a written reprimand and was suspended for five days. He sued various officials connected to the disciplinary process under 42 U.S.C. § 1983, alleging retaliation in violation of the First Amendment to the United States Constitution. The district court bifurcated trial proceedings so that potentially dispositive issues of law could be tried to the bench before calling in a jury. After bench proceedings concluded, the district court issued an opinion finding that the defendants were entitled to qualified immunity and that, even if they were not, Volkman had failed to prove his case as a matter of law. Volkman appeals the adverse judgment of the district court, and we affirm.

## I. BACKGROUND

In June 2008, the Illinois Department of Corrections ("IDOC") investigated Jody Burkhardt, a correctional officer at the Lawrence Correctional Center (the "LCC"). The investigation revealed that Burkhardt brought his cell phone into the LCC on or about May 8, 2008, and that he used it to make about thirty calls from inside the facility. His conduct violated internal IDOC policies, as well as the laws of the State of Illinois. IDOC referred the results of the investigation to the Lawrence County State's Attorney, Patrick Hahn, who filed felony charges against Burkhardt on June 30, 2008.

At lunch a few days after the charges were filed, another correctional officer, Chad Ray, told a number of employees that Burkhardt was being prosecuted on felony charges for accidentally bringing his cell phone into the facility. Ray

suggested that the others should feel free to voice their opinions to the State's Attorney as to how to pursue the matter.

One of the employees involved in that conversation was the appellant, Dwayne Volkman, a casework supervisor at the LCC. After work, Volkman called the State's Attorney from his personal cell phone. The State's Attorney was unavailable, so Volkman left a message with his secretary. Volkman told the secretary that, as a citizen of the county, he did not believe that any term of incarceration should be pursued in Burkhardt's case, and that the State's Attorney should consider allowing the matter to be handled internally through the IDOC disciplinary process. He stressed that he was only calling to express his opinion as a citizen, and not as an employee of the LCC.

State's Attorney Hahn called Volkman back later that night to ask what was going on at the LCC. During the ensuing conversation, Volkman told Hahn that he did not personally know all of the facts pertaining to Burkhardt's case, but that he did have an opinion. If Burkhardt had allowed an inmate to use the cell phone, Volkman felt prosecution to the fullest extent of the law would be warranted. If, on the other hand, Burkhardt had merely carried the cell phone into the facility, and it was not used improperly, Volkman felt the matter should be sent back and handled by IDOC internally.

News of Volkman's conversation with the State's Attorney reached Marc Hodge, the internal affairs investigator at the LCC, and Hodge commenced an investigation. First, he interviewed Chad Ray, who admitted that he asked his co-workers to contact the State's Attorney and to voice their displeasure with the Burkhardt prosecution. Next, he spoke to

Volkman. When Hodge asked Volkman if he spoke with the State's Attorney, Volkman asked if he was personally under investigation. Hodge suggested that the answer to Volkman's question depended on the answer to Hodge's question; Volkman declined to respond. Ultimately, Volkman was issued a written reprimand and suspended for five days as a result of his decision to contact the State's Attorney.

Volkman filed suit pursuant to 42 U.S.C. § 1983, naming six IDOC employees as defendants in both their individual and official capacities. Volkman's complaint alleged that his rights under the First Amendment to the United States Constitution were violated when he was retaliated against for engaging in protected speech, and, in the alternative, that he was retaliated against for his political affiliation. The defendants moved for summary judgment, arguing against Volkman's claims on the merits and that they were entitled to qualified immunity.

In response to the defendants' motion, Volkman consented to the dismissal of his political affiliation claim, and agreed that three of the six originally-named defendants were improperly joined. The district court independently noted that the official capacity claims against the three remaining defendants were blocked by the Eleventh Amendment. The court therefore narrowed the scope of the complaint to an individual-capacity free speech retaliation claim against defendants Marc Hodge, above-mentioned; Lee Ryker, then the warden at LCC; and Barbara Hess, an IDOC administrative assistant who was involved in coordinating disciplinary proceedings against Volkman.

Turning to the merits, the district court found that Volkman spoke as a private citizen on a matter of public concern when he contacted the State's Attorney. Because the defendants failed to provide the district court with any argument as to why IDOC's interests in suppressing Volkman's speech outweighed Volkman's interest in speaking, the district court denied summary judgment on the merits. It also found that, on the record as it existed at that time, the defendants were not entitled to qualified immunity.

Later, however, the district court reversed course. As trial approached, the defendants moved to bifurcate proceedings so that evidence regarding the *Pickering* factors could be presented to the judge alone, and not to a jury. Over Volkman's objection, the district court granted the defendants' motion. After the bench proceeding concluded, the district court found that the defendants' conduct did not violate Volkman's constitutional rights, and that even if it did, the defendants were entitled to qualified immunity. Volkman now appeals the judgment entered in favor of the defendants.

## II. ANALYSIS

Volkman argues that the manner in which the district court resolved the case—separating a bench trial on the issues of whether the speech was constitutionally protected and whether the defendants were entitled to qualified immunity from a jury trial on causation—was procedurally improper. He also argues that the defendants were not entitled to qualified immunity, and that they did, in fact, violate his rights as secured by the First Amendment.

We find no error in the district court's procedural approach, and we conclude that Volkman has not carried his burden of showing that the defendants' conduct violated a "clearly established" constitutional right. Accordingly, the defendants are entitled to qualified immunity. To the extent that any justiciable controversy remains after the doctrine of qualified immunity is applied, we affirm the district court's conclusion that Volkman has not shown the violation of his First Amendment rights.

*A. The District Court's Procedural Approach*

After denying summary judgment, the district court granted the defendants' motion to bifurcate the trial. In his opening brief, Volkman suggested that to do so was a procedural mistake. Volkman may have abandoned this argument in his reply brief (it is not mentioned at all), but we address it nonetheless in order to confirm that Volkman's right to a jury trial was not impaired.

The district court bifurcated Volkman's trial pursuant to Rule 42(b) of the Federal Rules of Civil Procedure. Under the rule, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). In doing so, "the court must preserve any federal right to a jury trial." *Id*. A district court's decision to bifurcate or to hold separate trials is reviewable for an abuse of discretion. *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008).

The district court did not abuse its discretion in this case. When a plaintiff brings a Section 1983 claim for retaliation in

violation of First Amendment rights in the employment context, our analysis has traditionally involved three steps. First, the court must decide whether the employee's speech was constitutionally protected. *Hutchins v. Clarke*, 661 F.3d 947, 955 (7th Cir. 2011) (citing *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006)). Second, the plaintiff must establish that the speech was a substantial or motivating factor in the alleged retaliatory action. *Hutchins*, 661 F.3d at 955–56. Finally, if the plaintiff satisfies the first two steps, the defendant has an opportunity to establish that the same action would have been taken in the absence of the employee's protected speech. *Id*.

Not all of these questions fall within the province of the jury. The latter two do; they concern causation as a factual matter, and are best answered by the traditional finder of fact. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1106 (9th Cir. 2011); *Thomas v. City of Blanchard*, 548 F.3d 1317, 1327 (10th Cir. 2008); *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008). But the first question—whether the employee's speech was constitutionally protected—is a question of law to be decided by the court. *Messman v. Helmke*, 133 F.3d 1042, 1046 (7th Cir. 1998); *see also Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). The same goes for the subsidiary considerations which supply the answer to that question, such as whether the plaintiff spoke as a private citizen on a matter of public concern, and whether the governmental interests served by suppression of the speech outweigh the interests of the employee in engaging in that speech. *Messman*, 133 F.3d at 1046.

The district court in this case simply separated the bench trial on issues of law—particularly, whether Volkman engaged

in protected speech—from the jury trial on issues of fact. Not only was this not an abuse of discretion, it was the most efficient way to proceed. If a plaintiff's speech is not constitutionally protected as a matter of law, his claim fails. In such instances, it is unnecessary to waste judicial resources on a jury trial to determine whether said unprotected speech was the reason for any adverse action taken against the plaintiff, because it makes no difference to the outcome of the case. We conclude that the district court's procedure was constitutionally adequate and was appropriately explained.

*B. Qualified Immunity and "Clearly Established" Rights*

In addition to ruling against Volkman outright on the issue of constitutional protection, the district court found that the defendants were shielded by the doctrine of qualified immunity, and that Volkman's case must therefore be dismissed. Volkman challenges that conclusion. We review the validity of a qualified immunity defense *de novo*. *Elder v. Holloway*, 510 U.S. 510, 516 (1994).

Governmental actors performing discretionary functions enjoy "qualified immunity," meaning that they are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir. 2010) (quoting *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007)); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis therefore traditionally involves a two-part inquiry. The first question is whether the defendants' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001)

(overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009)). The second question is whether that particular constitutional right was "clearly established" at the time of the alleged violation. *Id*. We may consider the two questions in either order. *Pearson*, 555 U.S. at 236–242. In this case, we begin by asking whether the right alleged to be violated is "clearly established."

Volkman bears the burden of establishing that the constitutional right at issue was clearly established. *Estate of Escobedo*, 600 F.3d at 779 (citing *Koger v. Bryan*, 523 F.3d 789, 802 (7th Cir. 2008)). Typically, "[t]he difficult part of this inquiry is identifying the level of generality at which the constitutional right must be clearly established." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). The Supreme Court has "repeatedly told courts … not to define clearly established law at a high level of generality," *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011), and the Seventh Circuit has long held that "the test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted." *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir. 1987). At minimum, Volkman must show that the contours of the right he alleges was violated are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo*, 600 F.3d at 779 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). And, although we are mindful that "an official action is not protected by qualified immunity only when the very action in question has previously been held unlawful," *id*., we have also said that "[f]or qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel … the conclusion for every like-situated, reasonable

government agent that what [he] is doing violates federal law *in the circumstances*." *Khuans v. Sch. Dist. 110*, 123 F.3d 1010, 1019–20 (7th Cir. 1997) (quoting *Lassiter v. Ala. A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994)).

The cases Volkman has put forward demonstrate little more than that the First Amendment right against retaliation, writ large, is clearly established. But this is not so easy a case that citing to a general proposition of law is enough to show that any reasonable official would have known that to restrict or punish Volkman's speech was unconstitutional. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (suggesting that general propositions of law give "fair warning" only in the most obvious cases). There are fact-intensive considerations at play, including whether Volkman spoke as a private citizen or in his capacity as a public employee, whether he spoke on a matter of public concern, and whether IDOC had an adequate justification for treating Volkman differently from any other member of the general public. *See Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563 (1968). The defendants highlighted the weakness of Volkman's effort to show that his rights were clearly established in their response brief, but he did nothing to buttress his position in his reply. As a result, we need not say at exactly what level of specificity Volkman was required to show that his rights were clearly established on these facts; it is enough to note that what he *has* done is plainly not enough.

C.  *Volkman's Rights Were Not Violated*

Finally, Volkman argues that even if the defendants are entitled to qualified immunity, his requests for injunctive and

declaratory relief still remain, thus keeping the case alive. *Denius v. Dunlap*, 209 F.3d 944, 959 (7th Cir. 2000) ("The doctrine of qualified immunity does not apply to claims for equitable relief."). There are serious questions about the continued justiciability of Volkman's non-monetary demands.[1] Putting those aside, however, there is a simpler reason why the district court's resolution of the case was correct: Volkman failed to prove his case.

As we have mentioned, our analysis of a First Amendment retaliation claim involves three steps. First, the court must decide whether the employee's speech was constitutionally protected. *Hutchins*, 661 F.3d at 955–956. Second, the plaintiff must establish that the speech was a substantial or motivating factor in the alleged retaliatory action. *Id*. Third, if the plaintiff satisfies the first two steps, the defendant has an opportunity to establish that the same action would have been taken in the absence of the employee's protected speech. *Id*.

Answering the first question—whether the speech was constitutionally protected—requires answering the subsidiary questions laid out in the *Connick-Pickering* test: whether

---

[1]   The injunctive relief he seeks is an order directing IDOC to vacate his written reprimand, but they may have done so internally already. If the injunctive relief is moot, we doubt whether, on these facts, the declaratory judgment request can stand alone. *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (a declaratory judgment request cannot sustain a live case or controversy where granting the declaratory judgment would not "affect[ ] the behavior of defendant toward the plaintiff"); *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (holding that a claim for declaratory relief is moot where the "primary claim of a present interest in the controversy is that [the plaintiff] will obtain emotional satisfaction from [the] ruling").

Volkman spoke as a private citizen or in his capacity as a public employee; whether he spoke on a matter of public concern; and whether the IDOC defendants had an adequate justification for treating Volkman differently than any other member of the general public. *See Hutchins*, 661 F.3d at 955; *Phelan*, 463 F.3d at 790. Throughout the pendency of this litigation, the district court maintained that Volkman did speak as a private citizen and that he spoke on a matter of public concern. With that, we summarily agree. The district court ruled against Volkman after the bench trial, however, because IDOC showed that its interests in suppressing the speech outweighed Volkman's interests in making it. The balancing of interests presents a question of law, which we review *de novo*. *Messman*, 133 F.3d at 1046.

We have derived seven factors from *Pickering* which we consider when conducting the balancing of interests:

(1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place, and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public.

*Gustafson v. Jones*, 290 F.3d 895, 909 (7th Cir. 2002) (citing *Greer v. Amesqua*, 212 F.3d 358, 371 (7th Cir. 2000)). When reviewing

these factors, we have observed that "[t]he initial, and often determinative, question is whether the speech interferes with the employee's work or with the efficient and successful operation of the office." *Knapp v. Whitaker*, 757 F.2d 827, 842 (7th Cir. 1985). Moreover, because *Pickering* is a balancing test—requiring us to weigh factors against each other, rather than to merely count how many factors line up on each side—one factor of great weight may offset several which lean slightly in the other direction.

The primary consideration here is the nature of the employer-employee relationship in the paramilitary context of a correctional center, a concern which goes to the first, second, third and fifth factors, in particular. We have acknowledged that, "[b]ecause police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." *Kokkinis v. Ivkovich*, 185 F.3d 840, 845 (7th Cir. 1999) (quoting *Tindle v. Caudell*, 56 F.3d 966, 971 (8th Cir. 1995)). The same logic applies to the law enforcement bodies tasked with protecting and maintaining our correctional centers, where safety and order are paramount concerns. In such settings, we afford considerable deference to the government employer's assessment of the risks that employee speech creates. *Id*. at 845–46; *see also Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006).

Viewing the case against this backdrop, we agree with the district court that IDOC's interests in restricting Volkman's speech weigh more heavily in the balance. Volkman was employed in a supervisory capacity. Supervisors are tasked

with enforcing rules and regulations. When a supervisor, like Volkman, criticizes a disciplinary decision (such as the decision to move the Burkhardt matter "out of house" to the prosecutor), it undermines other employees' respect for the chain-of-command, and for the rules which were violated in the first place. There is value in maintaining order and respect for their own sake in a paramilitary context like this one, and we will not second-guess prison officials' conclusion that the example Volkman set through his conduct was a detrimental one. To be sure, none of this is meant to suggest that Volkman's right to express his opinion on a matter of public concern is not also an important one. But in the paramilitary context of a correctional center, we agree with the district court that the LCC officials' interests in maintaining order and security in the workplace outweighed Volkman's interests in expressing his opinion on a work-related prosecution.

### III. CONCLUSION

The district court's decision to bifurcate the bench trial on issues of law from the jury trial on issues of fact was not an error, and we agree with the district court that Volkman has not provided sufficient authority for us to set aside the defendants' qualified immunity. To the extent that any justiciable request for relief survives the application of that doctrine, we further agree that Volkman's speech was not constitutionally protected as a matter of law. We AFFIRM the judgment of the district court.