In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 21-3394

KEVIN DEEREN,

*Plaintiff-Appellant,*

*v.*

RICHARD ANDERSON, *et al.,*

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 20-cv-508-bbc — **Barbara B. Crabb**, *Judge.*

_____

ARGUED SEPTEMBER 21, 2022 — DECIDED JUNE 26, 2023

_____

Before FLAUM, SCUDDER, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Deputy Sheriff Kevin Deeren announced his candidacy for Sheriff of Trempealeau County in late 2017. Shortly thereafter, in early 2018, officials within the Sheriff's Department discovered that Deeren had failed to disclose information about his arrest record when he applied to become a deputy. Specifically, Deeren was asked in a 2015 job interview whether he had any prior contact with law enforcement; he failed to disclose that he had been arrested and

charged with criminal sexual assault in 2007. After the De-
partment learned of the arrest in 2018, Deeren was again
asked about his prior contacts with law enforcement. Deeren
again omitted his 2007 arrest and, when confronted, refused
to answer questions about it. Then-Sheriff Richard Anderson
and Chief Deputy Harlan Reinders sought to terminate
Deeren for dishonesty and insubordination, and Deeren ulti-
mately resigned from the Department and lost the sheriff's
race to Brett Semingson, another deputy in the Department.

Deeren filed this lawsuit, alleging that Anderson,
Reinders, and Semingson engaged in several retaliatory ac-
tions against him in response to his candidacy and in violation
of the First Amendment. The district court granted summary
judgment for the defendants, concluding no defendant vio-
lated Deeren's First Amendment rights. We agree. Because
Deeren has failed to offer evidence from which a reasonable
jury could conclude that any defendant engaged in a single
act of unconstitutional retaliation, we affirm.

I

Kevin Deeren applied for a job with the Trempealeau
County Sheriff's Department in December 2014. During an in-
terview, he was asked whether he had received any citations
or had any prior contact with law enforcement. Deeren said
only that he had a couple of traffic tickets. He did not disclose
that he had been arrested and charged with felony sexual as-
sault in South Carolina in 2007. The prosecutor eventually
dropped the charges in September 2008, and Deeren's arrest
record was expunged under South Carolina law.

Without knowing about Deeren's arrest, then-Sheriff Rich-
ard Anderson made the decision to hire him pending a

background check. A lieutenant in the Department ran a criminal history check through the FBI's National Instant Criminal Background Check System, but it produced no arrest records for Deeren. The lieutenant also asked another county to run a background check on Deeren through Thomson Reuters' CLEAR database (the Department lacked its own account). The CLEAR report included information about Deeren's 2007 arrest and charges, but neither Anderson nor Chief Deputy Harlan Reinders read it before hiring Deeren. In the end, the sexual assault charges never came up during Deeren's hiring process, and he was hired as a patrol deputy in May 2015.

Deeren initially performed well and was promoted to patrol sergeant within a year. But things took a turn in late 2017. On the evening of November 4, Deeren assisted in the arrest of a man who had brutally assaulted his wife, resulting in a 72-hour no-contact order. The next day, Deeren went to interview the victim at her job on a dairy farm, only to find the domestic violence offender working beside her in clear violation of the no-contact order. Deeren decided not to enforce the order and allowed the offender to work beside the victim for several hours. After receiving complaints about the matter, Anderson ordered an investigation into Deeren's conduct at the farm and placed him on administrative leave. Upon completing the investigation, Anderson determined that Deeren should be demoted.

In a November 27 meeting, Anderson informed Deeren that he was being demoted because his actions at the farm demonstrated poor judgment and a lack of leadership. Deeren denied any wrongdoing and accused Sheriff Anderson of demoting him because he was running for sheriff. This was news to Anderson—Deeren had never told him that he was running

for sheriff, and at that point, Deeren had not publicly announced his campaign. Indeed, Deeren did not publicly launch his candidacy until November 29, two days after the meeting. Anderson told Deeren that he did not know about his campaign, and it had nothing to do with his demotion.

In the days that followed, Anderson criticized Deeren in private conversations with two individuals unaffiliated with the Department. First, he told a private citizen that Deeren had been demoted (which was true) and was a "bad guy" whom the citizen should stay away from. And second, Anderson told an assistant district attorney that Deeren was "no good" and implied that Deeren had complaints filed against him as a police officer in Chicago. In addition, Deputy Brett Semingson issued a memo calling for increased patrols in an area, about two miles from Deeren's home, due to complaints about traffic violations and drug activity. Deeren subsequently saw increased patrols around his neighborhood.

To prepare for a February 2018 personnel committee hearing on Deeren's demotion, Reinders reviewed Deeren's personnel file. Reinders found the CLEAR report, read it for the first time, and learned of Deeren's sexual assault arrest. Reinders was alarmed not simply by the arrest on felony charges, but also because the CLEAR report did not indicate how the charges had been resolved (a felony conviction would have rendered Deeren ineligible to carry a gun or to serve as a law enforcement officer in Wisconsin). Reinders immediately notified Anderson about the arrest; they began to investigate the resolution of the charges and informed the County's attorney of the discovery. Around the same time, a coordinator at a local domestic violence shelter independently learned of Deeren's 2007 arrest and notified the

County's attorney. The 2007 arrest did not come up at the hearing, and the personnel committee ultimately determined that Deeren's sergeant rank should be reinstated.

After the hearing, Anderson hired an independent private investigator to probe the details of Deeren's arrest. The investigator interviewed Deeren in early March. He warned Deeren at the outset that refusal to answer any question may result in discipline or termination for insubordination. The investigator then started with the same question Deeren had been asked in his 2015 job interview: to disclose all pre-2015 contacts with law enforcement. Again, Deeren omitted his sexual assault arrest—he identified only a speeding ticket, a wrong-way driving ticket, and a previously undisclosed underage drinking ticket. When pressed by the investigator on whether he had any other contact with law enforcement, Deeren said "no." The investigator then identified the South Carolina woman who had accused Deeren of sexual assault and asked Deeren whether he knew her. Deeren said he was "not legally obligated to answer that question." The investigator reminded Deeren that his refusal to answer would be considered insubordination and could result in his termination. Deeren acknowledged that he understood but continued to refuse to answer any questions about his arrest.

After the interview, the investigator informed Anderson that Deeren had refused to answer questions nine different times during the interview. Anderson decided that Deeren should be terminated for his dishonesty during the hiring process and his dishonesty and insubordination during the investigation. In late April, the personnel committee held a hearing on Deeren's termination and rejected Anderson's recommendation. Despite the committee's decision, Deeren

resigned from the Department and began campaigning for sheriff on a full-time basis.

Less than a week after his resignation, Deeren told the local paper that Anderson targeted him because of his candidacy for sheriff. Deeren did not provide specifics about what the paper referred to as "the 2007 incident in Chicago" but insisted that it was not connected to his employment as a police officer and that an investigation "revealed no wrongdoing" on his part. Local media and other citizens sought details of the incident and began making public records requests for Deeren's personnel file. Deeren, in turn, sued the County in state court to block the release of records relating to his 2007 arrest and his discipline for dishonesty and insubordination. The court partially granted Deeren's request, and the County released only the parts of Deeren's records that complied with the court's order. Deeren did not appeal the order or object to the records that were produced.

In the end, Deeren lost the November 2018 election to Semingson—a life-long Trempealeau County resident and 25-year Department employee. Deeren later joined the City of Osseo Police Department as a reserve officer (Osseo is in Trempealeau County). Osseo's police chief—who had supported Deeren's bid for sheriff—stopped by Semingson's office to discuss Deeren's hiring. Semingson told the chief that he should not hire Deeren as a police officer and expressed concern about Deeren having access to the County's records database (which it shared with Osseo). Semingson was worried that, given Deeren's negative campaigning and past dishonest conduct, Deeren might try to manipulate information in the database to make Semingson or the Department look bad. After the meeting, the chief sent Semingson a follow up

email informing him that Deeren would continue to work for Osseo, but he would not be used as a patrol officer or given access to the database. Semingson did not respond or discuss Deeren further with the police chief.

Deeren filed this lawsuit against Anderson, Reinders, and Semingson, alleging that each retaliated against him in violation of his First Amendment rights. He also brought a *Monell* claim against Trempealeau County and several state law claims. The district court granted summary judgment to defendants on all federal claims and relinquished jurisdiction over the state law claims under 28 U.S.C. § 1367(c)(3).

II

We review the district court's grant of summary judgment de novo and draw all reasonable inferences in favor of Deeren, the non-moving party. See *Smith v. City of Janesville*, 40 F.4th 816, 821 (7th Cir. 2022).

To establish a prima facie case of First Amendment retaliation, Deeren must demonstrate that: "(1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter him from exercising his First Amendment rights; and (3) his speech was a motivating factor in his employer's adverse action against him." *Cage v. Harper*, 42 F.4th 734, 741 (7th Cir. 2022). The parties do not dispute that Deeren's campaign speech was constitutionally protected, so we focus on the last two elements. The second element asks whether a defendant's conduct "would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). The third element requires the plaintiff to show causation, meaning that his "protected conduct was a substantial or

motivating factor in the employer's decision" to take the adverse action against him. *Kingman v. Frederickson*, 40 F.4th 597, 602 (7th Cir. 2022) (citation omitted). If Deeren produces enough evidence to establish these elements, then the burden shifts to the defendants to show that they would have taken the same action regardless of the protected speech. *Sweet v. Town of Bargersville*, 18 F.4th 273, 278 (7th Cir. 2021). If the defendants carry that burden, then the plaintiff must offer facts reasonably suggesting that the defendants' proffered reasons were pretextual. *Kingman*, 40 F.4th at 601.

Deeren has failed to offer evidence to support a prima facie case of First Amendment retaliation. For starters, Deeren says Anderson and Semingson's negative comments about him were retaliatory. Specifically, he points to Anderson's statements to the private citizen and the assistant district attorney, and Semingson's February 2019 conversation with the Osseo police chief. No reasonable juror could find that these statements would deter a person of ordinary firmness from engaging in protected speech. When the alleged retaliatory act is a defendant's speech, the plaintiff must show that the speech in question rose "to the level of threat, coercion, intimidation, or profound humiliation." *Novoselsky v. Brown*, 822 F.3d 342, 356–57 (7th Cir. 2016). Nothing Anderson or Semingson said approaches that high bar. Their statements about Deeren were simply the kinds of critiques that come with the territory of running for office. And criticism—even in the form of condemnation—is not enough. *Id.* What's more, we will not "afford one party his right to free speech while discounting the rights of the other party." *Hutchins v. Clarke*, 661 F.3d 947, 956 (7th Cir. 2011). Anderson retained his own First Amendment right to express opinions of Deeren, a candidate for public office. And the First Amendment did not compel

Semingson to withhold his concerns about Deeren when the Osseo chief approached him months after the campaign had ended. See *id.* at 956–57 (disclosure of past disciplinary history was not a threat, coercion, or intimidation actionable under 42 U.S.C. § 1983).

Next, Deeren points to three alleged acts that no reasonable jury could find retaliatory. First, Deeren argues that the increased patrols in his neighborhood were meant to intimidate him. But no evidence in the record supports that assertion or otherwise suggests that the increased patrols had anything to do with his campaign. Without evidence reasonably suggesting that the policy targeted him based on his speech, Deeren's subjective belief that the patrols put him under surveillance is wholly insufficient. Second, Deeren says that one of the defendants leaked details to the public about his 2007 sexual assault arrest. But here too Deeren offers only speculation, and there is no evidence to support an inference that any defendant leaked information about Deeren to the public, let alone that they did so to retaliate against his speech. And third, Deeren contends that defendants selectively released his personnel records and withheld positive records in his file. This argument is flatly contradicted by the record. Deeren sued to block the release of his file, the County complied with the court's order in releasing Deeren's records, and no evidence suggests that any individual defendant was even involved in releasing his records to the public. What's more, Deeren personally received his complete personnel file in December 2017. If he wished for the public to have a more complete picture of his file, nothing stopped him from sharing information about his certificates, awards, and commendations at any time (indeed, it appears that Deeren did just that by sending his record to a newspaper).

That leaves Anderson and Reinders's recommendation to terminate Deeren in February 2018. No reasonable juror could find a causal link between Deeren's speech and the termination recommendation. Deeren relies on timing alone, highlighting that these actions occurred after he announced his candidacy. But the three-month gap between Deeren's campaign announcement and the termination recommendation is insufficient to create a triable issue of fact on causation. See *Kingman*, 40 F.4th at 603 (finding three months between plaintiff's public criticism of defendant and plaintiff's termination, even with escalating hostility within that period, unconvincing to show causation). Even if we assume Deeren could show causation and shift the burden to the defendants, his retaliation claim would still fail. Anderson and Reinders offered a legitimate explanation for their termination recommendation—Deeren's dishonesty and insubordination. At summary judgment, Deeren must "produce evidence upon which a rational finder of fact could infer that the defendants' proffered reasons are lies." *McGreal v. Village of Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017) (cleaned up). Such evidence does not exist here. It is undisputed that Deeren failed to disclose his 2007 arrest when he applied to the Department, and that he again refused to provide truthful answers to the investigator's questions in 2018. Deeren offers nothing to undermine the truthfulness of Anderson and Reinders's non-retaliatory reasons for seeking his termination.

Lastly, Deeren contends that even if none of the identified acts can be considered retaliatory in isolation, together they amounted to a campaign of retaliatory harassment. We disagree. True, "a campaign of petty harassment" that includes "minor forms of retaliation" and "false accusations" may violate the First Amendment. See *Massey v. Johnson*, 457

F.3d 711, 720–21 (7th Cir. 2006) (quoting *DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995)). But at summary judgment, a plaintiff must muster evidence that could reasonably show that the alleged campaign of retaliation was motivated by the plaintiff's protected speech. That evidence does not exist here, and no rational jury could find that the events identified by Deeren amounted to a campaign of retaliation designed to deter his free speech. See *id.* at 721. In this case, zero plus zero equals zero. Deeren's attempt to aggregate non-retaliatory actions—taken by different individuals over the span of many months—cannot save his retaliation claims from summary judgment.

We end with Deeren's *Monell* claim against the County. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a county may be liable for a deprivation of an individual's constitutional rights that result from an official policy, custom, or practice. The district court did not address Deeren's *Monell* claim in its opinion, but it nevertheless entered summary judgment in the County's favor. While the court should have explained its ruling, summary judgment for the County necessarily followed from Deeren's failure to identify an underlying constitutional violation. See *Novoselsky*, 822 F.3d at 357 ("To have a viable *Monell* claim for damages, a plaintiff must show a violation of his constitutional rights by an individual defendant."). In other words, because no individual defendant violated Deeren's constitutional rights, "it follows that [he] cannot avoid summary judgment on his *Monell* claim against the county." *Id.*

On this record, no reasonable jury could find that Anderson, Reinders, or Semingson retaliated against Deeren for

exercising his First Amendment rights. Accordingly, we affirm the district court's entry of summary judgment.

AFFIRMED