In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3355

ESTATE OF CHRISTOPHER J. DAVIS, *et al.*,

*Plaintiffs-Appellees,*

*v.*

JUAN ORTIZ,

*Defendant-Appellant.*

Appeal from United States District Court for the
Eastern District of Wisconsin.
Case No. 18-CV-1846-JPS — **J.P. Stadtmueller**, *Judge*.

ARGUED SEPTEMBER 21, 2020 — DECIDED FEBRUARY 5, 2021

Before WOOD, BRENNAN, and SCUDDER, *Circuit Judges*.

WOOD, *Circuit Judge*. Deputy Juan Ortiz shot Christopher Davis in the head on February 24, 2016, during a drug bust that went awry. Arguing that Ortiz unreasonably seized Davis in violation of the Fourth Amendment, Davis's Estate sued Ortiz for money damages under 42 U.S.C. § 1983. Ortiz responded with an assertion of qualified immunity, but the

district court rejected it, holding that disputes of material fact on which immunity depended had to be resolved by the trier of fact.

Ortiz has appealed from the denial of qualified immunity. But our appellate jurisdiction is secure only if the relevant material facts are undisputed or (what amounts to the same thing) when the defendant accepts the plaintiff's version of the facts as true for now. See *Johnson v. Jones*, 515 U.S. 304 (1995). Neither condition is present here, and so we must dismiss Ortiz's appeal for want of jurisdiction.

# I

The underlying facts of the case are depressingly familiar. Police from the Village of East Troy, Wisconsin, were conducting an operation designed to nab drug dealers. Officer Jeffrey Price hoped to conduct a "sting" operation, using a confidential informant (CI) to lure Roberto Juarez-Nieves into delivering cocaine. The CI arranged to meet Nieves at Roma's, a local restaurant. Nieves showed up in a Pontiac Bonneville, along with Davis and Jose Lara, who was driving. Lara parked the Bonneville in the crowded restaurant lot, next to an empty Grand Marquis. Just as the police arrived in their marked squad car and started to park behind the Grand Marquis, Lara began slowly to pull out of his parking spot. Officer Craig Knox had to step aside to avoid the car. As Lara headed for the exit, Deputy Juan Ortiz, who was standing 50 feet away to participate in the drug bust, fired four shots into the car. One of those shots hit Davis. Lara kept driving for a brief time, but he crashed the car. The police apprehended both Lara and Nieves as they fled on foot, and medical personnel pronounced Davis dead.

This lawsuit followed on behalf of Davis's Estate. The Estate argued that Ortiz's use of deadly force was unreasonable for purposes of the Fourth Amendment and sought damages. See *California v. Hodari D.*, 499 U.S. 621, 625–26 (1991) (a person is seized if police use physical force to bring him under control). It accepted Ortiz's statement that he did not intend specifically to shoot Davis, but it disputed Ortiz's assertion that he meant to shoot *only* the driver, Lara. The district court found that Ortiz's testimony was not enough to establish as a matter of law that Ortiz was aiming exclusively for the driver. *Christopher v. Ortiz*, No. 18 CV 01846, 2019 WL 6310559 (E.D. Wis. Nov. 25, 2019) ("Dist. Ct."). Instead, Ortiz said that his "intent was to stop the threat that was coming at [him]," and he agreed that "firing into the vehicle was the way to stop that threat[.]" Based on that account, the district court found, "a jury could conclude that Ortiz was shooting at the car *generally* to make it stop, rather than at the driver or any other particular area of the vehicle." The court also found that a reasonable jury could conclude that deadly force was excessive in the circumstances presented, if one were to accept the Estate's evidence over that of the police. It thus denied Ortiz's motion for qualified immunity. Relying on cases such as *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), and *Behrens v. Pelletier*, 516 U.S. 299 (1996), Ortiz filed an interlocutory appeal from the district court's order.

## II

### A

The Supreme Court has long recognized the private and social costs of dragging government officials into civil litigation. See *Harlow*, 457 U.S. at 816 (discussing liability and litigation costs, but also the "distraction of officials from their

governmental duties, inhibition of discretionary action, and deterrence of able people from public service"). To strike a balance between addressing constitutional injuries committed by state actors and limiting the costs of section 1983 suits, it has held that the common-law doctrine of "qualified immunity" applies in most cases against executive officials, including the police. *Id.* at 807.

As the Court recently put it, "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quotation marks omitted); see also *Pearson v. Callahan*, 555 U.S. 223 (2009). Qualified immunity is meant to protect "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 8 (2015). It is essential to evaluate the public official's conduct at the correct level of granularity. See *id.*; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The unlawfulness of challenged conduct is "clearly established" for this purpose only if it is "dictated by controlling authority or a robust consensus of cases of persuasive authority," such that it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Wesby*, 138 S. Ct. at 589–90 (quotation marks omitted).

Once a government official invokes qualified immunity in a section 1983 suit, the burden shifts to the plaintiff to defeat the defense by showing (1) that a trier of fact could conclude that the officer violated a federal right, and (2) that the unlawfulness of the conduct was clearly established at the time the officer acted. *Id*. at 589. If the plaintiff cannot do so, the motion for summary judgment must be granted. See *Thompson v.*

*Cope*, 900 F.3d 414, 420 (7th Cir. 2018). This reflects the fact that the entitlement that qualified immunity protects is, in the first instance, "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Defendants are authorized to, and often do, invoke qualified immunity in a summary-judgment motion.

B

Collateral orders, such as an order denying a motion for qualified immunity, are immediately appealable "final decisions" under 28 U.S.C. § 1291 if they conclusively determine the disputed question, resolve an issue completely separate from the merits, and are effectively unreviewable on appeal from a final judgment. *Forsyth*, 472 U.S. at 530; see *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949).

In *Forsyth*, the Supreme Court held that a denial of a public official's summary-judgment motion asserting qualified immunity was immediately appealable under *Cohen* "to the extent" that the denial turned "on an issue of law." 472 U.S. at 530. For example, a court of appeals might review "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged action," or "whether the law clearly proscribed the actions the defendant claims he took." *Id*. at 528. Such issues, the Court reasoned, satisfy *Cohen's* requirements for a conclusive and unreviewable determination, because an order denying qualified immunity settles the question and forces the public official to stand trial. Once the trial has taken place, the official has incurred the very costs the doctrine is designed to avoid, and thus any review that can occur at the end of the case is limited at best. *Id*. at 525–27. The Court concluded that if "qualified immunity is in part an entitlement not to be forced to litigate

the consequences of official conduct," then a "a claim of im-munity is conceptually distinct," and therefore separate, "from the merits of the plaintiff's claim that his rights have been violated." *Id*. at 527–28.

But when the district court's denial stems from a finding that genuine issues of material fact remain to be resolved, and thus summary judgment is unavailable, the order denying the motion is not immediately appealable. *Johnson*, 515 U.S. at 313. In these cases, unlike in cases involving "abstract issues of law," the "fact-related legal issues" pertaining to the im-munity defense may collapse into the merits of the plaintiff's claim, violating *Cohen's* separability requirement. *Id*. at 314, 317.

The only qualification occurs when the officer seeking im-munity is willing to take the factual issues off the table and accept (for purposes of the qualified immunity motion) the factual account plaintiff has presented. *Johnson* does not pre-clude appellate review in that situation. *Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011); *Thompson*, 900 F.3d at 419. We are thus entitled to "consider[] the abstract legal question of whether a given set of undisputed facts demonstrates a violation of clearly established law. … In reviewing this purely legal ques-tion, we take the facts as the district court assumed them when denying summary judgment, *Johnson*, 515 U.S. at 319, or in [the] light most favorable to the plaintiff, the non-movant … ." *Gutierrez v. Kermon*, 722 F.3d 1003, 1009 (7th Cir. 2013). Nonetheless, if we "detect a back-door effort to contest the facts," we will dismiss the appeal for want of jurisdiction. *Clark*, 630 F.3d at 680; see, *e.g.*, *Stinson v. Gauger*, 868 F.3d 516, 525–26 (7th Cir. 2015) (dismissing on jurisdictional grounds where defendant's briefs contradicted the district court's

factual findings and failed to construe the evidence in the light most favorable to the plaintiff).

### III

The district court identified a number of genuine issues of fact in the summary-judgment record before it. Among other things, the court found it unclear from the record "what Ortiz was actually shooting at when he fired towards the [Bonneville.]" Dist. Ct. at *7. As we pointed out earlier, while Ortiz contended that "he was aiming at Lara to the exclusion of anyone else," the district court found this assertion undermined by Ortiz's own statement that "his 'intent was to stop the threat that was coming at [him]' and that 'firing into the vehicle was the way to stop that threat[.]'" Dist. Ct. at *5. A rational jury could find, based on that statement, that he intended to hit either the moving Bonneville or any of the people in it. Or the jury might believe him when he said that he was targeting only the driver (although even that much might not resolve the legal issues). This leaves a critical disputed issue of material fact on the question whether Ortiz acted in an objectively reasonable way as he was firing. For purposes of the qualified-immunity inquiry, these facts, taken in the light most favorable to the Estate, suffice to allege a constitutional violation. See, *e.g.*, *Leaf v. Selnutt*, 400 F.3d 1070, 1081 (7th Cir. 2005).

Ortiz has not fully accepted the Estate's version of the facts, and so he cannot defend our appellate jurisdiction on that basis. Indeed, he comes closer to asking us to accept his version of the facts over the Estate's. He characterizes the district court and the parties as "unequivocally agree[ing] that Deputy Ortiz did not intend to shoot Davis, but instead that [Ortiz] was focused on the driver of the vehicle." Pet. Brief at 13. That is not what the record shows. The district

court specifically found that at "no time did Ortiz state that he was aiming his weapon solely at [the driver] in such a manner as to eliminate all potential inferences otherwise." Dist. Ct. at *5. And Davis maintains that Ortiz "intended to shoot at the vehicle to stop it," without regard to any particular occupant. Ortiz replies that these competing accounts are not "mutually exclusive" because when Ortiz fired his gun, he "'was focused on Lara as the driver,' *and* he intended to stop the vehicle."

Given the fact that this is a Fourth Amendment case, all this talk of intent is largely beside the point. The Supreme Court has made it clear that "Fourth Amendment reasonableness is predominantly an objective inquiry." See, *e.g.*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (quotation marks omitted). The pertinent question is whether a jury could find that Ortiz's actions—firing repeatedly at a moving vehicle as it was leaving the parking lot—were objectively unreasonable under all the circumstances, and thus amount to a Fourth Amendment violation. There is evidence to support a finding that Ortiz was aiming at the car as a whole. As part of that effort, he discharged four bullets, one of which fatally injured Davis. At trial, Ortiz will have an opportunity to convince the jury that his actions were objectively reasonable, but we cannot resolve that question at this stage.

## IV

Just as in *Johnson*, the record on summary judgment in this appeal reveals issues that must be resolved by the trier of fact. Ortiz has not raised "a question that is significantly different from the questions underlying plaintiff's claim on the merits," 515 U.S. at 314; rather, he raises the same fact-based question

about the objective reasonableness of his seizure of Davis that the jury must resolve.

We DISMISS the appeal for lack of jurisdiction.