In the

# United States Court of Appeals

## For the Seventh Circuit

—————————

No. 21-1125

ALHADJI F. BAYON,

*Plaintiff-Appellee,*

*v.*

MARSHALL BERKEBILE, et al.,

*Defendants-Appellants.*

—————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cv-01122 — **Richard L. Young**, *Judge.*

—————————

ARGUED SEPTEMBER 29, 2021 — DECIDED MARCH 28, 2022

—————————

Before EASTERBROOK, RIPPLE, and ST. EVE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* In this action brought under 42 U.S.C.
§ 1983, Alhadji Bayon alleges that Marshall Berkebile, Matthew York, and Robbin Myers, officers of the Indianapolis
Metropolitan Police Department, violated his Fourth Amendment rights by employing excessive force during his apprehension. In due course, the officers moved for summary judgment on the ground of qualified immunity. The district court
denied the officers' motion, concluding that the facts relevant

to their qualified immunity argument were in dispute. The officers now appeal the district court's ruling. For the reasons set forth in this opinion, we dismiss the appeal for lack of appellate jurisdiction.

# I

# BACKGROUND

## A.

On the morning of December 24, 2017, Mr. Bayon attempted to rob a gas station in Indianapolis, Indiana.[1] He fled the scene in a white Chevrolet Traverse. Numerous police officers learned of the attempted robbery over their police radios and, with their emergency lights activated, gave chase. Mr. Bayon refused to stop, and, consequently, a high-speed pursuit through residential areas ensued.

To end this dangerous situation, one of the pursuing officers, Officer Theodore Brink, executed a maneuver with his car that resulted in the Traverse spinning and crashing into a tree in the front yard of a home. Officer York, a recruit officer in training riding with Officer Brink, exited the police vehicle and stood behind the passenger-side door. Officer Myers reached the scene shortly after the crash and positioned her police vehicle about twenty-five feet from Mr. Bayon's vehicle. Officer Berkebile also arrived at the scene after the crash,

---

[1] Due to the COVID-19 protocols at his correctional facility, Mr. Bayon was unable to review all the evidence the defendants presented in support of their motion for summary judgment or respond to the motion, thus we do not have his version of the facts other than those given in his deposition. Our account of the facts comes from the facts assumed by the district court and the evidence submitted on the officers' summary judgment motion, construed in Mr. Bayon's favor.

parked his vehicle about thirty to forty yards away, and positioned himself on his knees behind his vehicle's engine block facing Mr. Bayon's Traverse.

Using a loudspeaker, Officer Myers ordered Mr. Bayon to exit the Traverse multiple times. Mr. Bayon did not immediately comply with these orders; the officers indicated that he took several minutes to exit the vehicle. Each of the officers had a clear view of the driver-side door, but because the door had been damaged in the crash and the airbags had deployed, the officers could not see inside the Traverse.

Mr. Bayon testified in his deposition that he was dazed from hitting his head during the collision. Moreover, the damage from the crash made it difficult for him to open the door of the Traverse. Eventually, he was able to force the door open and exit the vehicle. On the street Mr. Bayon saw ten to fifteen police officers and heard two conflicting commands: to put his hands up and to show identification.[2] He reached toward his back right pants pocket for his wallet. The officers responded to his movements by shooting him. Three bullets hit Mr. Bayon, and he fell face-first to the ground. Once he was on the ground, the officers approached him and rolled him over. Mr. Bayon stated that once he was rolled

---

[2] R.152 at 4. In his deposition, Mr. Bayon described the following scene: "There were a bunch of demands being made. Now, I was told, I was told put your hands up, put your hands up. Then I heard show identification. Put your hands up. Like there was a bunch of demands. A bunch of yelling, a bunch of yelling. So I made, I made the movement as to go in my back pocket to reach for my ID, reach for my wallet, and then that's when I felt—the first bullet I felt was the one in my right thigh, I mean, my right upper thigh which spun me around." R.97-4 at 41:5–14.

over, one of the officers said, "Oh, my God, he doesn't have a weapon."[3]

The officers present a different version of the events. Following Officer Myers's orders to exit the Traverse, the officers reported that it took Mr. Bayon approximately five minutes to exit the vehicle. Prior to his exit, Officer Myers observed the Traverse rocking back and forth. Officer Myers thought he could be digging around for something in the vehicle. After Mr. Bayon finally exited the vehicle, the officers saw him take several aggressive steps towards Officer Myers. Each officer also saw him reach for something in or near his waistband. Officer Berkebile saw him reach for the front of his waistband, not his back pocket. Officer Myers saw Mr. Bayon reach down and lift up his t-shirt where she saw a black, hard object with a ribbed handle and thought it was a gun. Officer York saw Mr. Bayon lift his shirt and reach for a black object in the waistband of his pants. He also heard other officers yell "gun" before shots were fired.[4] After rolling Mr. Bayon over while he was on the ground, Officers York and Myers saw another officer pull "a car jack handle, about 2 feet long" out of his pant leg.[5] When asked by Officer Myers why he did it, Mr. Bayon told her that he "wanted to

---

[3] R.152 at 5; R.97-4 at 42:8–10.

[4] R.97-3 at 3.

[5] R.97-2 at 4; R.97-3 at 4.

die."[6] In his deposition, Mr. Bayon stated that he did not recall making that statement.[7]

**B.**

Mr. Bayon brought this action against the officers, alleging that the shooting was unreasonable and violated his Fourth Amendment rights. The officers moved for summary judgment, asserting that their use of force was justified and that, in any event, they were entitled to qualified immunity because their conduct did not violate clearly established law.

After setting forth the facts in the light most favorable to Mr. Bayon, the district court determined the record presented a genuine issue of material fact for a jury to decide.[8] Relying on *Strand v. Minchuk*, 910 F.3d 909, 915 (7th Cir. 2018), the district court concluded that "[a] reasonable jury could find that, when the officers shot Mr. Bayon, he was 'subdued and complying with the officer[s'] orders.'"[9] And if Mr. Bayon was complying with the officers' orders at the time of the shooting, then the jury would be obligated to find that the officers employed an unreasonable use of force. The district court further noted that "Mr. Bayon testified that he did not reach for his waistband, but for his back pocket—and that he did so in compliance with the officers' orders."[10] Because the facts

---

[6] R.97-2 at 4.

[7] R.97-4 at 60; 17–22.

[8] R.152 at 8.

[9] *Id.*

[10] *Id.*

underlying the officers' qualified immunity argument were in dispute, the district court denied the officers' motion for summary judgment.

## II

## DISCUSSION

We begin with an examination of our appellate jurisdiction. As a general proposition, a district court's denial of summary judgment is an unappealable interlocutory order because it is not a "final decision" as that term is employed in 28 U.S.C. § 1291. *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011); *Thompson v. Cope*, 900 F.3d 414, 419 (7th Cir. 2018). The judiciary has recognized an exception to this rule when a district court denies summary judgment on the ground that the defendants are not entitled to qualified immunity.[11] Because qualified immunity protects the public officer from the expense and distraction of having to stand trial when the conduct in question did not violate clearly established law, the unavailability of an immediate interlocutory appeal would render any later reversal of the district court's decision

---

[11] A qualified immunity defense "shields federal and state officials from money damages unless a plaintiff demonstrates that the official violated a statutory or constitutional right *and* that the right was 'clearly established' at the time of the challenged conduct." *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Whether a defendant officer is entitled to qualified immunity thus involves two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013).

illusory. *See Estate of Davis v. Ortiz*, 987 F.3d 635, 639 (7th Cir. 2021).[12]

This exception to the final decision rule is, however, a very narrow one. The denial of qualified immunity is only appealable to the extent that it turns on an issue of law, *White v. Gerardot*, 509 F.3d 829, 833 (7th Cir. 2007), our review is therefore confined to abstract issues of law, *see Johnson v. Jones*, 515 U.S. 304, 317 (1995). We may not reconsider the district court's determination that certain genuine issues of fact exist. *Id.* at 319–20.

Here the nature of the claim is fact intensive. Mr. Bayon asserts that the officers violated his Fourth Amendment right that protects individuals from law enforcement officers' unreasonable use of force. When evaluating excessive force claims, the court has to "consider 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight.'" *Siler v. City of Kenosha*, 957 F.3d 751, 758–59 (7th Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In undertaking this task, the court must assess the totality of the circumstances from the perspective of a reasonable officer on the

---

[12] *See also Plumhoff v. Rickard*, 572 U.S. 765, 772 (2014) (noting that "this immunity issue is both important and completely separate from the merits of the action, and this question could not be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irretrievably lost"); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

scene. As we have noted, the very nature of this task often makes summary judgment in these cases inappropriate. *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (observing that, because "the *Graham* reasonableness inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, … summary judgment … in excessive force cases should be granted sparingly" (internal quotation marks omitted)). When material facts are disputed, a jury must resolve those disputes and determine whether the officers acted reasonably.

Here, the district court determined that the facts underlying Mr. Bayon's claim were in dispute. The district court noted that Mr. Bayon testified that he did not reach for his waistband, but for his back pocket—"and that he did so in compliance with the officers' orders."[13] The court also noted that "[t]he only evidence that Mr. Bayon possessed a weapon is the officers' testimony, which is inconsistent and—more importantly—rebutted by Mr. Bayon's testimony."[14] Mr. Bayon also testified in his deposition, "There were a bunch of demands being made. Now, I was told, I was told put your hands up, put your hands up. Then I heard show identification."[15] Thus, a reasonable jury could find that Mr. Bayon was subdued and complying with the officers' orders when he was shot.

The officers' submission that they are entitled to qualified immunity is based on their own version of the facts, not on

---

[13] R.152 at 8.

[14] *Id.* at 7.

[15] R.97-4 at 41:5–7.

the facts taken in the light most favorable to Mr. Bayon. The officers assert they are entitled to qualified immunity because "no clearly established law put them on notice that their conduct would violate Bayon's rights."[16] In making this argument, however, the officers necessarily assumed the acceptance of their version of numerous disputed facts: whether Mr. Bayon was compliant with their orders; whether he walked aggressively towards the officers; whether he reached for the object in his waistband or for his back pocket; and whether there was a black object in his waistband. The officers offer inferences from their version of the facts supportive of their characterization of Mr. Bayon's movements as aggressive. They posit that Mr. Bayon "initially ignored commands to exit his vehicle, then walked aggressively toward an officer with an object that appeared to be a gun in his waistband."[17] They emphasize that the officers saw "Bayon walk aggressively with tense muscles and a scowl on his face."[18] They urge that although "Bayon may have appeared to be complying with officer orders to show identification, … his aggressive, purposeful, fast steps toward Officer Myers were threatening because he was not yet under officers' control."[19]

The fundamental difficulty with the officers' argument is that both the facts offered by the officers and their characterization of those facts conflict with Mr. Bayon's account and the

---

[16] Appellants' Br. 9.

[17] *Id.*

[18] *Id.* at 13.

[19] *Id.* at 15 (citation omitted).

permissible inferences that can be drawn from his rendition. Mr. Bayon explained that he had difficulty opening the driver's side door and exiting his vehicle due to the damage from the crash. He also described feeling dazed and disheveled upon exiting the vehicle and facing a large police force. He testified that he took two or three steps forward but had no plans to do anything because he was "just one guy," and he knew "it was over."[20] In his deposition, Mr. Bayon stated that after exiting the vehicle, he "maybe took two or three, maybe two or three steps. [But] I didn't advance."[21] By contrast, the officers portray Mr. Bayon as walking aggressively with tense muscles and a scowl on his face. Mr. Bayon also contested the assertion that he had a large black metal pipe in his pants.[22]

The situation here is different from the one presented to us in *Siler v. City of Kenosha*. In *Siler*, the record made clear that, at the time he confronted the officer, Mr. Siler belligerently defied the officer's directions to get on the ground and dared the officer to shoot him. 957 F.3d at 760. It was also undisputed that, during the confrontation, Mr. Siler, who was significantly larger and younger than the police officer, became more aggressive and escalated the conflict into a one-on-one standoff in a garage with bystanders present. *Id.* In that situation, we concluded that the undisputed operative

---

[20] R.97-4 at 46:5–15.

[21] *Id.* at 44:22–24.

[22] Mr. Bayon asserted in his deposition that he believed the black pipe found on the ground near where he was apprehended "was planted to justify them shooting me." *Id.* at 47:11–16.

facts justified the lone officer's conclusion that he was facing the immediate threat of an overpowering attack. *Id.*

Here, by contrast, there remain serious questions about the degree of resistance, if any, that Mr. Bayon displayed at the time the officers acted.[23] Mr. Siler "had refused every opportunity to surrender during the chase." *Id.* at 760. While Mr. Bayon failed to surrender during the car chase, the facts could support a finding that, upon exiting the vehicle, he was surrendering and reaching for his identification. The officers contend that Mr. Bayon was not subdued or under control at the time of the shooting, but as the district court correctly determined, a reasonable jury could find otherwise. The officers are not asking us to accept the "facts assumed by the district court, supplemented as appropriate only by the undisputed evidence viewed in the light most favorable to [Mr. Bayon]."[24] Instead, the officers' legal arguments are premised on *their* version of the facts, which the district court correctly determined were genuinely disputed.

"[O]ur appellate jurisdiction is secure only if the relevant material facts are undisputed or (what amounts to the same thing) when the defendant accepts the plaintiff's version of the facts as true for now." *Est. of Davis*, 987 F.3d at 637 (citing *Johnson*, 515 U.S. 304). Therefore, as we have noted earlier, a party may not seek to invoke our jurisdiction when its arguments are dependent on, and inseparable from, disputed

---

[23] Mr. Bayon testified to the following, "it was a big police presence, like the whole street was blocked off. I mean, there was police all over the whole street." *Id.* at 45:4–6.

[24] Appellants' Br. 1.

facts. *Gant v. Hartman*, 924 F.3d 445, 449 (7th Cir. 2019) (citing *White*, 509 F.3d at 835); *Gutierrez v. Kermon*, 722 F.3d 1003, 1010–11 (7th Cir. 2013). Although the officers suggest otherwise, they "are not asking us for review of an abstract question of law, but rather they seek a reassessment of the district court's conclusion that sufficient evidence existed for [Bayon] to go to trial." *Stinson v. Gauger*, 868 F.3d 516, 526 (7th Cir. 2015); s*ee also Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011).

Here, the parties disagree as to what exactly happened after Mr. Bayon exited the vehicle and prior to the gunshots being fired. Did Mr. Bayon pose a threat to a reasonable officer after he exited his vehicle? How immediate was the threat? Did he continue to resist arrest? These issues present the "uncertainties and unresolved material questions of fact" that must be resolved by a factfinder before liability can be assessed. *Smith v. Finkley*, 10 F.4th 725, 741 (7th Cir. 2021). "These factual disputes bear on the objective reasonableness of the force used to arrest Mr. [Bayon], and therefore a trial is required before a determination can be made as to whether [the officers are] entitled to qualified immunity." *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008). Because they remain unresolved at this juncture, we cannot entertain an appeal based on whether, as a matter of law, the defendant officers are entitled to qualified immunity.

## CONCLUSION

We dismiss the appeal for lack of jurisdiction. Mr. Bayon may recover his costs of this appeal.

APPEAL DISMISSED