In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-2890

KATHLEEN HAYES,

*Plaintiff-Appellee,*

*v.*

BOARD OF EDUCATION OF THE CITY OF CHICAGO
and MATTHEW LYONS,

*Defendants-Appellants.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 21-cv-01198 — **John F. Kness**, *Judge.*

———————————

ARGUED MAY 14, 2025 — DECIDED MAY 28, 2026

———————————

Before SYKES, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* Kathleen Hayes, a college administrator responsible for staffing student teachers with Chicago Public Schools, made several public comments disparaging the school district. Matthew Lyons, the school district's Chief Talent Officer, notified Hayes's supervisors about her comments and asked them to address the issue in

whatever manner they saw fit. The supervisors saw fit to terminate Hayes's employment.

Hayes then sued Lyons and the Board of Education of the City of Chicago for, among other claims, retaliation in violation of the First Amendment. Lyons and the Board moved for summary judgment on several grounds including qualified immunity. The district court denied the motion.

We see the issue largely as Lyons does, so we reverse. Even if we assume that Lyons violated Hayes's First Amendment rights by complaining to her employer about her speech, no sufficiently analogous caselaw put Lyons on notice of this. Lyons therefore is entitled to qualified immunity and judgment as a matter of law. The Board, however, is not a proper party to this appeal, so we dismiss it from this appeal and leave the parties to sort their rights in district court. Lastly, because this appeal is not frivolous, we deny Hayes's request under Federal Rule of Appellate Procedure 38 to sanction her opponents.

## I

Kathleen Hayes was an administrator at Northwestern University's School of Education and Social Policy from 2016 until her termination in 2020. In that role, Hayes placed Northwestern student teachers at Chicago Public Schools (CPS) sites. During the relevant period, Hayes was also a parent of a child enrolled in CPS, which is operated by the Board of Education of the City of Chicago.

During her time at Northwestern, Hayes repeatedly wrote and endorsed criticisms of CPS on social media. In one post, Hayes condemned CPS's CEO for "contradictory statements" about school breaks. In another post, Hayes denigrated CPS's

student information system using the phrase "#aspensucks." In yet another, she commented on an article about a CPS school by asking, "it's like, which CPS school will have a scandal this week?" Hayes also pointed out that state and federal officials "ha[d] given [CPS] a no-confidence vote on protecting kids from sexual abuse and ensuring special education students' needs are met." As a final example, Hayes circulated a petition calling for CPS to expand its investigation of and reporting on racial inequities in the school district.

At least one CPS school principal saw Hayes's posts and shared them with CPS's Chief Talent Officer, Matthew Lyons. Soon after, on February 22, 2020, Lyons emailed Timothy Dohrer, Hayes's direct supervisor, and David Figlio, then Dean of Northwestern's School of Education and Social Policy. In the email, Lyons expressed concern about "Hayes' social media usage and the impact that it [was] having on CPS." He claimed that Hayes's posts the past several months were interfering with CPS and Northwestern's work by "disparag[ing] CPS and question[ing] the motives and competence of [CPS's] leadership." Nevertheless, Lyons acknowledged Hayes's "undisputed rights to express" her views and that she "[wa]s entitled to her opinions." Lyons concluded his email: "I will leave this in your hands to address as you believe appropriate."

According to Lyons's email, "several CPS principals" had brought Hayes's social media activity to his attention. Two days later, when Dohrer responded asking Lyons how many principals had viewed Hayes's posts, Lyons replied: "[T]he harm here is admittedly hard to quantify, other than a handful of principals." In that same email, Lyons added that he did not "think this [was] a termination-worthy issue." Lyons later

testified at his deposition that he was unaware of how many people saw Hayes's posts and that only one principal had reached out to him about Hayes's social media activity.

Five days after Lyons's initial email, Dohrer requested permission to fire Hayes. He cited her social media posts and how they impaired the partnership between CPS and Northwestern. Before this, Hayes's job performance at Northwestern had been rated consistently as "excelling." Approximately two weeks after firing Hayes, Dohrer informed Lyons and apologized for Hayes's conduct.

Hayes sued Lyons and the Board for retaliating against her for activity protected by the First Amendment (Count I), conspiracy to violate her First Amendment rights (Count II), tortious interference with prospective economic gain (Count III), and conspiracy to commit tortious interference (Count IV). The district court granted summary judgment to the defendants on the last three counts. The court denied summary judgment on the first count—First Amendment retaliation—for three reasons. One, as to the Board specifically, the court found there was a genuine issue of fact about whether Lyons had final policymaking authority for purposes of the Board's municipal liability for Lyons's actions under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Two, the court reasoned that there was a triable issue as to whether Lyons's email to Hayes's supervisors constituted an actionable retaliatory threat. Three, the court held that Lyons is not protected by qualified immunity because the law clearly established "that sending a threatening email to an individual's employer seeking to chill the employee's speech violated the employee's constitutional rights." *Hayes v. Bd. of Educ. of City of Chicago*, No. 21 Civ. 1198, slip op. at 4 (N.D. Ill. Sep. 26, 2024)

(citation omitted). Both Lyons and the Board appeal the district court's denial of qualified immunity to Lyons, and no other aspect of the district court's ruling.

## II

We first address two jurisdictional issues: (1) whether we can decide this interlocutory appeal of an order denying qualified immunity; and (2) whether the Board is a proper party to this appeal.

### A. Whether this Appeal is a Proper Interlocutory Appeal

We address this first question because Hayes argues that the district court's denial of qualified immunity to Lyons at the summary judgment stage is not appealable. True, denials of summary judgment generally are nonappealable interlocutory orders. *See Ortiz v. Jordan*, 562 U.S. 180, 188 (2011). But where the denial of qualified immunity at summary judgment turns exclusively on issues of law, that decision is immediately appealable. *Id.* ("[I]mmediate appeal from the denial of summary judgment on a qualified immunity plea is available when the appeal presents a 'purely legal issue.'" (citation modified)); *see also Johnson v. Jones*, 515 U.S. 304, 319–20 (1995) ("[A] defendant … may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."). This is "[b]ecause qualified immunity protects the public officer from the expense and distraction of having to stand trial when the conduct in question did not violate clearly established law." *Bayon v. Berkebile*, 29 F.4th 850, 853 (7th Cir. 2022). Therefore, "'the unavailability of an immediate interlocutory appeal' would take away the very benefit that qualified immunity was created to provide." *Id*.

To determine whether the denial of qualified immunity turns exclusively on issues of law, we examine whether the district court's order "identifies factual disputes as the reason for denying qualified immunity" and examine whether the parties' filings "adopt the plaintiff's facts." *Flowers v. Renfro*, 46 F.4th 631, 634 (7th Cir. 2022). So long as the appeal assumes the plaintiff's facts and raises purely legal issues, then we have jurisdiction to hear the appeal. *Jones v. Clark*, 630 F.3d 677, 679–80 (7th Cir. 2011) (noting that appellate jurisdiction is proper where the defendant "concede[s] for purposes of the appeal that the plaintiff's version of the facts is correct," or "accept[s] the district court's view that there are factual disputes but take[s] each disputed fact in the light most favorable to the plaintiff" and "focus[es] exclusively on legal questions").

Hayes argues the denial of qualified immunity is not appealable in this case because the district court found that issues of material fact precluded summary judgment. Tellingly, the portion of the district court order that Hayes relies on for support is the section where the district court exclusively considered the First Amendment retaliation claim. In that section, which does not mention qualified immunity, the district court found that "[w]hether Lyons's communications with Northwestern were—in actuality—a threat, constitutes a genuine issue of material fact necessitating trial." *Hayes*, slip op. at 3.

The district court separately considered Lyons's qualified immunity defense. That portion of district court's order stated, in relevant part:

> Plaintiff argues that Seventh Circuit caselaw clearly establishes that even petty harassment could amount to First Amendment retaliation.

> … Plaintiff's argument and citations to support-
> ing caselaw are sufficient, at this stage, to show
> that the law was clearly established: a reasona-
> ble public official in Defendant Lyons's shoes
> would have understood that sending a threat-
> ening email to an individual's employer seeking
> to chill the employee's speech violated the em-
> ployee's constitutional rights. … Accordingly,
> Defendant Lyons is not protected by qualified
> immunity.

*Id.* at 4. This language demonstrates that the district court de-
nied Lyons's qualified immunity defense as a matter of law,
as opposed to based on an issue of disputed fact. *See Plumhoff
v. Rickard*, 572 U.S. 765, 772 (2014) (quoting *Johnson*, 515 U.S.
at 313). In this portion of the district court's order, the court
assumed that Lyons's conduct constituted an actionable
threat and denied qualified immunity while acknowledging
in the prior section that factual issues precluded a decision on
the underlying First Amendment claim.

The nature of the defendants' arguments on appeal also
confirms that this is a proper interlocutory appeal raising a
purely legal issue. Rather than making "a back-door effort to
contest the facts" on appeal, the Board and Lyons fully adopt
Hayes's facts. *Jones*, 630 F.3d at 680. Defendants clearly said
so in their appellate briefs, stating that they "w[ould] not con-
test" the district court's "version of the facts." They were even
clearer at oral argument, saying that they "[we]re not asking
the court to determine any factual dispute," and expressly re-
serving discussion of "all of the factual disputes that [oppos-
ing] counsel spoke of or that were identified by the district
court … [for] when and if [they] get back before the district

court." As we discuss in Part III below, the defendants then argue exclusively that Lyons was entitled to qualified immunity as a matter of law, without relying on any disputed facts. All of the above confirms our jurisdiction. *Cf. Stewardson v. Biggs*, 43 F.4th 732, 737 (7th Cir. 2022) (finding we lacked jurisdiction because the officer's arguments were "inseparable from the questions of fact identified by the district court") (citations and quotations omitted); *White v. Gerardot*, 509 F.3d 829, 834–36 (7th Cir. 2007) (finding we lacked jurisdiction because the officer "advance[d] no legal arguments purporting to show that he [wa]s entitled to qualified immunity based upon" undisputed facts).

## B. Whether the Board is a Proper Party on Appeal

Before oral argument, we asked the parties to address the Board's continued presence on appeal. *See* 24-2890, Dkt. 3. The grounds for jurisdiction over the Board's appeal were not immediately apparent because the defendants only appealed the district court's denial of Lyons's qualified immunity defense, which is a personal defense unavailable to units of government like the Board. *See Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006). Despite conceding that qualified immunity defenses are personal, the Board argues that it should be permitted to appeal to avoid the risk of inconsistent verdicts and because it would have to indemnify Lyons for any damages awarded. We find neither argument persuasive.

For its inconsistent-verdict argument, the Board relies on principles derived from *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (per curiam). There, the plaintiff brought constitutional claims against individual police officers and the city under Section 1983. *Id.* at 797. At a bifurcated trial against one of the officers, the jury found that the officer was not personally

liable for the constitutional claims. *Id.* at 797–98. With the officer gone, the trial court dismissed the claim against the city, reasoning that "if the police officer had been exonerated by the jury there could be no basis for assertion of liability." *Id.* at 798. The Ninth Circuit reversed that judgment, believing that the jury could have simultaneously found for the officers on the personal liability claim while also finding that the city was liable under *Monell* for the unconstitutional policies that the officers implemented. *Id.* The Supreme Court reversed the Ninth Circuit. *Id.* at 799. The Court held that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." *Id.*

Our court has interpreted *Heller* "narrow[ly]" as holding only that "a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). In *Thomas*, we acknowledged that individual public officials may avoid liability for a host of reasons that do not implicate *Heller*. *Id.* at 304–05. Plaintiffs may, even in the exercise of due diligence, sue the wrong officials. *Id.* at 305. Or officials may succeed on an affirmative defense like good faith, which excuses the officials from liability despite their concession that the plaintiff's rights were violated. *Id.* at 304. Under such circumstances, a verdict against the municipality on the *Monell* claim would not be inconsistent because "one c[ould] still argue that the City's policies caused the harm, even if the officer was not individually culpable." *Id.*

From this, defendants argue that an inconsistent verdict would follow here if we were to find that Lyons was entitled to qualified immunity. On remand, they argue, the district court would be left with a surviving unappealable *Monell* claim (unappealable on an interlocutory basis, that is) based on the very same conduct by Lyons that this court would have decided is entitled to immunity.

We disagree. Lyons's conduct is relevant to Hayes's claim against him and, separately, Hayes's claim against the Board premised on Lyons's role as a policymaker. Qualified immunity would absolutely absolve Lyons of liability for his actions in his individual capacity. But it would have no effect on the Board's liability for Lyons's unconstitutional actions as a CPS policymaker. Accordingly, defendants' fear of an inconsistent verdict would only come to fruition if we concluded that Lyons's conduct did not violate Hayes's First Amendment right at all (because the Board would then be subject to a jury verdict about conduct that was actually constitutional). And because defendants explicitly disclaimed any argument on the first prong of qualified immunity, we assume without deciding that Lyons's conduct violated the Constitution.

Moreover, our review of the district court's denial of Lyons's qualified immunity defense is not "inextricably intertwined" with Hayes's claim against the Board. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995) (holding that the court of appeals lacked jurisdiction over a county commission's appeal because the district court's decision about the commission's liability was not inextricably intertwined with the court's decision to deny individuals qualified immunity). Nor is our review of Hayes's claim against the Board necessary to ensure meaningful review of the court's denial of

Lyons's qualified immunity defense. *Id*. Thus, we are assured that we do not run the risk of causing inconsistent verdicts here.

We are similarly unpersuaded by the Board's argument that it is a proper party on appeal because of its obligation to indemnify Lyons for any damages. This is not to say that the Board's argument is frivolous. Indeed, there may be some merit to the notion that an indemnification obligation constitutes a financial stake in the appeal sufficient for jurisdiction. *Cf. Principal Mut. Life Ins. Co. v. Cincinnati TV 64 Ltd. P'ship*, 845 F.2d 674, 677 n.1 (7th Cir. 1988) ("The general rule is that a party may only appeal to protect its own interests, and not those of a nonparty or another party, unless the appellant has a direct financial stake in the appeal."). On the other hand, qualified immunity is a personal defense designed to "protect the finances of public officials whose salaries do not compensate them for the risks of liability under vague and hard-to-foresee constitutional doctrines." *See Hernandez*, 455 F.3d at 776. Because we have said that the same concerns do not exist in suits against the government, *see id.*, it is not intuitive that the government is entitled to appeal based on an indemnification obligation.

That said, we do not need to decide whether an indemnification obligation is sufficient to confer jurisdiction because, as discussed below, we conclude that Lyons is entitled to qualified immunity and therefore does not need to be indemnified. As such, the Board is not a proper party to this appeal and is dismissed as a party.

**III**

With our jurisdiction secure, we turn to the merits of Lyons's appeal. We review the summary judgment decision de novo and take the facts in the light most favorable to Hayes as the non-moving party. *See Taylor v. Schwarzhuber*, 132 F.4th 480, 486 (7th Cir. 2025). Although Hayes is the non-movant, she bears the burden of our qualified immunity analysis and therefore must identify a constitutional right she contends Lyons violated and case law that clearly establishes that right. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

Although we decide the issue at the second step of the qualified immunity analysis (did case law clearly establish Lyons would be violating Hayes's constitutional right?), that step necessarily requires us to discuss the right at issue. *See al-Kidd*, 563 U.S. at 735 (noting that courts "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first"); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("[I]t often may be difficult to decide whether a right is clearly established without deciding precisely what the existing constitutional right happens to be.") (citations and quotations omitted). Accordingly, we begin at the first step of the qualified immunity analysis (did Lyons violate a statutory or constitutional right?).

At the first step, Hayes argued, and the district court found, that individuals enjoy a First Amendment right to be free from a public official's "retaliatory speech … intimating that punishment, sanction or adverse regulatory action will imminently follow." *Hayes*, slip op. at 3 (citing *Hutchins v. Clarke*, 661 F.3d 947, 956 (7th Cir. 2011)). The district court held

that, on the merits, there was a dispute of fact about whether Lyons's emails constituted retaliatory speech.

On appeal, Lyons assumes without conceding or challenging the district court's construction of the constitutional right at issue, that Hayes wins at the first step of the qualified immunity analysis. Lyons then exclusively argues that he is entitled to qualified immunity in any event because—at the second step—he had no reason to know that his actions would violate the Constitution. Given Lyons's position, we assume without deciding that his emails could be construed as a violation of Hayes's First Amendment right to free speech. We therefore limit our review to whether the specific contours of the right, as defined by the district court, were clearly established at the time Lyons complained to Northwestern about her speech. *See generally United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (observing the principle of party presentation).

To determine whether the right at issue was clearly established, we must look to "all relevant precedents—both those cited by the parties and those we discover ourselves." *Taylor*, 132 F.4th at 487 (citations and quotations omitted). From there, we consider whether the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he [wa]s doing violate[d] that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This requires a comparison of "the specific context of the case" to the clearly established law at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Following these steps leads us to conclude that Hayes cannot overcome Lyons's qualified immunity defense. *See Anderson*, 483 U.S. at 640.

To clearly establish a right, "[t]he relevant precedent must define the right with a 'high degree of specificity,' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'" *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). To meet her burden, therefore, Hayes must proffer precedent that places "beyond debate" the question of whether a public official's emails to its business partner complaining of the partner's employee's speech constitute retaliatory threats or coercion in the first place. *Id.* ("A right is not clearly established if existing precedent does not place the constitutional question beyond debate."). The case must have defined the right such that Lyons could have read the case before emailing Northwestern and known that his conduct was unconstitutional. *Id.* None of the cases Hayes relies on meet that standard.

We begin with *Hutchins v. Clarke*, which the district court cited in its judgment. The plaintiff in *Hutchins* had called in to a local radio show and made several statements disparaging his superior, the county's sheriff. 661 F.3d at 950. The sheriff later called in to the same show and stated that the plaintiff was bitter and had been disciplined for sexually harassing another employee. *Id.* Before reaching our holding, we acknowledged that public officials cannot retaliate against protected speech by using "threatening, harassing, or intimidating" speech that suggests punishment "will imminently follow." *Id.* at 956 (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000)). Although we affirmed this right, we concluded that the sheriff did not violate the Constitution because his comments "pertain[ed] to a *past* disciplinary action and in no way intimate[d] any *future* disciplinary action against Hutchins." *Id.* Additionally, the sheriff's comments

were not so embarrassing or ridiculing as to violate the First Amendment. *Id.* at 957 (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

As Hayes sees it, *Hutchins* is clearly established precedent from nearly a decade before Lyons's email showing that Lyons's conduct was unlawful. But *Hutchins* undermines Hayes's position. For one thing, the sheriff's conduct in *Hutchins* was arguably more harmful than Lyons's conduct yet we ultimately judged that conduct constitutional. The sheriff publicly lambasted his subordinate in retaliation for the subordinate's speech; Lyons directly notified Hayes's supervisors about her posts and his concerns. And although Northwestern ultimately fired Hayes, Lyons at no point urged that course of action. Rather, Lyons wrote that he "will leave this in [Hayes's supervisors'] hands to address as [they] believe appropriate" and he later added that he did not "think this [was] a termination-worthy issue." Given the important differences between the facts of *Hutchins* and the instant case, *Hutchins* did not put Lyons on notice that his criticisms of Hayes's speech as a public official were unlawful.

Hayes relies on two other decisions predating Lyons's conduct, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) and *Backpage.com, LLC v. Dart*, 807 F.3d 229, 231 (7th Cir. 2015), that are similarly inapposite.

In *Bantam Books*, a public commission issued letters to book publishers and distributors "reminding" them of the commission's legal obligation to refer those selling obscene materials to minors for criminal prosecution. 372 U.S. at 62. The commission also informed publishers that the commission had sent lists of "objectionable publications" to local police departments. *Id.* at 62–63. The Supreme Court enjoined

the commission, finding that their conduct amounted to an unlawful "system of informal censorship" that threatened "invoking legal sanctions and other means of coercion, persuasion, and intimidation." *Id.* at 67, 69, 71.

*Backpage.com* involved a similar government scheme. There, as in *Bantam Books*, the county sheriff sent letters on official letterhead to credit card companies "request[ing] that [they] immediately cease and desist from allowing [their] credit cards to be used to place ads on websites like Backpage.com," an internet company that published classified adult advertisements. 807 F.3d at 231; *see also id.* at 230. The sheriff also implied in his letter that credit card companies could be prosecuted for their failure to comply with state and federal laws against human trafficking and money laundering if they continued to do business with the company. *Id.* at 232. A memo drafted by one of the sheriff's staff revealed the letters were bare "threats in the form of 'reminders.'" *Id.* Backpage.com brought a First Amendment claim, and we held the sheriff's conduct violated the plaintiff's First Amendment rights by "us[ing] his office as sheriff to intimidate the credit card companies." *Id.* at 237.

Even viewing the facts in the light most favorable to Hayes, *Bantam Books* and *Backpage.com*'s facts are not sufficiently analogous to have placed Lyons on notice that his conduct constituted unlawful retaliation. His conduct was a far cry from the defendants' conduct in those two cases. Unlike the state commission in *Bantam Books* and the sheriff in *Backpage.com*, Lyons did not threaten Hayes or Northwestern with prosecution or other comparable legal sanction. Instead, as we stated earlier, Lyons dispelled the notion that he was

directing Hayes's supervisors to terminate her and he affirmed Northwestern's independence in addressing the issue.

Additionally, we explained in *Backpage.com* that when considering similar challenges to government speech, "[w]hat matters is the distinction between attempts to convince and attempts to coerce." *Id.* (quoting *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003) (per curiam)) (internal quotation marks omitted). Lyons's statements, when compared to the statements in *Backpage.com* and *Bantam Books*, were not so clearly attempts to coerce that Lyons is not entitled to qualified immunity. *See al-Kidd*, 563 U.S. at 741; *Anderson*, 483 U.S. at 640. These fundamental factual differences mean that Lyons was not on notice that his statements were unlawful.

Hayes relies on a final case, *NRA of America v. Vullo*, 602 U.S. 175 (2024), that we will not consider in our qualified immunity analysis because it was decided after Lyons emailed Hayes's supervisors. *See City of Tahlequah v. Bond*, 595 U.S. 9, 13 (2021) (per curiam) (holding that a case "decided after the [conduct] at issue, is of no use in the clearly established inquiry").

We end our discussion instead with *Novoselsky v. Brown*, 822 F.3d 342 (7th Cir. 2016), a case Lyons highlights in support of his qualified immunity defense. There, a plaintiff who was a lawyer filed multiple lawsuits against the court clerk's office. In response, the clerk complained about the plaintiff to the state bar, a private watchdog group, and the county board of commissioners. *Id.* at 347–48. The clerk also issued a press release and held a press conference to discuss the lawsuits. *Id.* at 347. The plaintiff then sued the clerk herself, alleging that she had violated his First Amendment rights by retaliating against him. *Id.* at 346. In assessing the clerk's qualified

immunity defense, we found that, even assuming that the plaintiff's speech was protected by the First Amendment, the clerk's conduct did not constitute actionable retaliation. *Id.* at 356–57. On this, we said that "[u]nconstitutional retaliation by a public official requires more than criticism or even condemnation," and "[h]owever impolitic" the clerk's statements may have been, they "did not rise to the level of threat, coercion, intimidation, or profound humiliation." *Id.*

We granted qualified immunity in *Novoselsky* because we concluded that the clerk's conduct did not violate the plaintiff's constitutional right—the first step of qualified immunity analysis. As discussed above, Lyons elected to challenge the district court's decision at only the second step of qualified immunity. Thus, we cannot say that Lyons is entitled to qualified immunity for the same reasons as the clerk in *Novoselsky*. However, *Novoselsky* is relevant to our second-step inquiry into whether any prior caselaw clearly established the unconstitutionality of Lyons's actions. And as we see it, *Novoselsky*, like *Backpage.com* and *Bantam Books*, did not put Lyons on notice that his conduct would violate Hayes's constitutional right. Accordingly, Hayes cannot meet her burden necessary to overcome Lyons's qualified immunity defense.

## IV

For these reasons, we DISMISS the Board from this appeal, REVERSE the decision of the district court and REMAND for further proceedings consistent with this opinion. Because defendants' appeal is not frivolous, we also DENY Hayes's motion for sanctions under Federal Rule of Appellate Procedure 38.